[No. B162114. Second Dist., Div. Seven. May 12, 2003.]

HOWARD H. HALL et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
BRENT LINDRUM, Real Party in Interest.

**COUNSEL**

Hollins & Fields, Howard M. Fields and Stuart E. Cohen for Petitioners.

No appearance for Respondent.

Law Offices of Howard A. Kapp and Howard A. Kapp for Real Party In Interest.

**OPINION**

**JOHNSON, J.**—This case raises a significant issue as to the duties attorneys owe to nonclients. It arises out of a tragic event. A young girl drowned in a pool at the home of the paternal grandmother while the father and grandmother were present at the house, but the mother was not. The mother retained a lawyer to represent her in a wrongful death action against the grandmother, her husband's mother. The father never consulted with his wife's lawyer about the case against his own mother. Only after the mother recovered a settlement in that lawsuit did the father sue his now estranged spouse for half the recovery and her lawyer for malpractice and breach of fiduciary duty. He alleged the lawyer owed him a duty either to advise him of his rights in connection with the wrongful death action or to name him as a nominal defendant in that action. The lawyer moved for summary judgment, arguing he owed no duty to the father, who was never his client. The

trial court denied the motion, finding triable issues of material fact concerning the lawyer's state of mind.

In this writ proceeding, we conclude the lawyer owed no legal duty to the father as a matter of law and the lawyer, therefore, is entitled to summary judgment. Accordingly, we direct the trial court to vacate its order denying petitioners' summary judgment motion and to issue an order granting the motion.

### FACTS AND PROCEEDINGS BELOW

Based on our review of the record, the following facts are undisputed:

On May 12, 1999, real party in interest Brent Lindrum took his two-and-a-half-year-old daughter to his mother's house. Some of Brent's[1] other relatives were there, but his wife, Estella Lindrum, was not. At some point during the day, Brent found his daughter at the bottom of his mother's pool. An ambulance took the toddler to the hospital. She died two days later after she was removed from a life support system.

On February 25, 2000, Estella began to live separate and apart from Brent. Sometime before then, she contacted petitioner, attorney Howard H. Hall, and arranged a meeting to discuss whether she had any legal claims arising from her daughter's death. Estella met with Hall on March 7, and retained him that day to file a wrongful death action against Brent's mother. On April 6, 2000, Hall filed the action on behalf of Estella. Hall never consulted with Brent about the wrongful death case.

Brent was angry with Estella for filing the lawsuit against his mother and he asked her to drop it. He believed "it was such an evil thing they [Estella and Hall] were doing." Brent told Estella he did not want anything to do with any "dirty" money she recovered from the lawsuit. Brent contacted a lawyer in or around late March or early April 2000 to discuss a potential divorce. He told Estella if she did not dismiss the case against his mother by his birthday, May 19, he would file for divorce. On September 28, 2000, Brent filed a petition for dissolution of marriage.

In December 2000, the wrongful death case went to mediation. The limit on the homeowner's insurance policy held by Brent's mother was $300,000. The case settled for $210,000. On January 8, 2001, Fireman's Fund issued a

---

[1] In this opinion we use the first names of the husband-father and wife-mother as the most convenient way of identifying parties who had the same last name during the events described.

check in that amount, made payable to "Estela [*sic*] Lindrum as Executrix of the Estate of Shelby Lindrum & Her Atty Howard H Hall." No party has received any portion of these settlement funds.

After the wrongful death case settled, Brent consulted an attorney and decided he wanted a portion of the recovery. In June 2001, he filed this action for damages against Hall, the Law Offices of Howard H. Hall (collectively, Hall) and his ex-wife Estella.[2] The first amended complaint alleges causes of action against Hall for legal malpractice and breach of fiduciary duty. It also alleges causes of action against Estella for breach of fiduciary duty and breach of contract.[3] Brent seeks half of the proceeds from the settlement and other damages in an unspecified amount.

The first amended complaint alleges Hall had a duty to advise Brent of his rights in connection with the wrongful death action, or to suggest Brent consult another attorney about those rights, or to name Brent as a nominal defendant in the wrongful death action. Brent alleges he would not have been opposed to the lawsuit against his mother and, in fact, would have joined it, if someone had informed him the lawsuit "could be pursued without any practical damage to the interests and emotional state of his mother or her ability to retain ownership of her home of more than 35 years." He also alleges he did not understand "the underlying action was, as a practical matter, fully covered by the insurance provided by Fireman's Fund." Brent asserts he lost his right to seek his own recovery for the wrongful death of his daughter because Hall and Estella kept him in the dark about his rights. According to Brent, Estella filed a cross-action against Hall for legal malpractice, which is pending in the trial court.

Hall moved for summary judgment, arguing he did not have a duty "to proactively seek out and advise [Brent,] a non-client[,] of potential legal rights . . . ." At the hearing on the motion, the trial court agreed Hall did not owe Brent any duty. The court stated its conclusion Hall would have violated rule 3-310 of the Rules of Professional Conduct if he had represented Brent or advised him in any way. Based on the circumstances of the child's death (i.e., the fact Brent was present and Estella was not), the court perceived a potential conflict of interest between Brent and Estella.

Notwithstanding the above conclusion, the trial court questioned whether Hall had a "professional duty" to join Brent in the wrongful death action as

---

[2]According to Brent, the judgment of dissolution in the divorce action was entered on April 18, 2001 "and the marital status ended on May 1, 2001."

[3]Causes of action in the first amended complaint for declaratory relief and intentional infliction of emotional distress apparently were dismissed before the hearing on the summary judgment motion at issue.

a nominal defendant. The court pointed out wrongful death cases are subject to the "single action" rule, and all known heirs should be joined in one wrongful death action. The court queried: "[I]f [Hall] was obligated to so join Mr. Lindrum [as a nominal defendant], what are the legal consequences of his failure to do so, since he owed no duty[?] It isn't a question of duty; what is it?"

The trial court denied Hall's summary judgment motion, finding triable issues of material fact "as to what was going on in [Hall's] mind."[4] The court determined the jury must decide many factual questions, such as what Hall thought about "the potential of Brent Lindrum for exposure to the defense of contributory negligence; [and] . . . whether or not Mrs. Lindrum . . . did or did not blame her husband for the loss of their child . . . ."

We issued an order to show cause to review the trial court's ruling.

## DISCUSSION

It is axiomatic Brent Lindrum must establish Hall owed him a legal duty in order to prevail on his causes of action for malpractice and breach of fiduciary duty. The determination of duty is a question of law.[5] Accordingly, if Brent cannot establish such a duty, Hall is entitled to summary judgment. The parties do not dispute this.

Relying entirely on this appellate district's opinion in *Meighan v. Shore*,[6] Brent contends Hall had a duty to advise both him and his (then) wife "of their options" concerning the wrongful death action against Brent's mother. We agree *Meighan* is an appropriate starting point for our analysis because it provides a useful guideline for defining the scope of an attorney's duty to a client's spouse.

In *Meighan*, the plaintiff contacted defendant attorney and made an appointment with him to discuss whether she and her husband had any legal claims arising from the treatment her husband had received at a hospital after he was admitted for chest pains.[7] Both the plaintiff and her husband met with the attorney and discussed the facts of the case with him. The attorney

---

[4]Pursuant to Code of Civil Procedure section 437c, subdivision (e), the trial court disregarded statements in Hall's declaration concerning his state of mind. Subdivision (e) provides, in pertinent part, "summary judgment may be denied in the discretion of the court . . . where a material fact is an individual's state of mind, or lack thereof, and that fact is sought to be established solely by the individual's affirmation thereof."

[5]*Meighan v. Shore* (1995) 34 Cal.App.4th 1025, 1033 [40 Cal.Rptr.2d 744].

[6]*Meighan v. Shore, supra,* 34 Cal.App.4th 1025.

[7]*Meighan v. Shore, supra,* 34 Cal.App.4th at pages 1031-1032.

concluded plaintiff's husband "had a viable medical malpractice claim against the hospital and the attending physician for failing to administer medication that might have limited the extent of damage from the heart attack he suffered . . . ."[8] The attorney took the case and had plaintiff's husband sign a retainer agreement. The attorney told the plaintiff he was not representing her and she understood he was not representing her. The plaintiff had several subsequent conversations with the attorney "in which he 'repeatedly gave [her] legal advice'—presumably about the medical malpractice action on behalf of [her husband]."[9]

About a year after the attorney filed the medical malpractice action, plaintiff's husband retained new counsel and "learned of [the plaintiff's] entitlement to pursue an action for loss of consortium."[10] By that time, however, any loss of consortium claim against the health care providers was time-barred. Plaintiff's husband settled the malpractice action. The plaintiff filed a negligence action against the attorney "premised on his duty to inform her of her right to sue the health care providers for loss of consortium and for negligent infliction of emotional distress."[11]

The attorney moved for summary judgment, arguing (1) he did not owe the plaintiff a duty because she was not his client and (2) "his decision not to pursue an action on her behalf was based on a reasonable and good faith exercise of discretion, and hence was not actionable . . . ."[12] The attorney claimed he had determined the plaintiff could not state a valid cause of action either for loss of consortium or for negligent infliction of emotional distress, but he did not communicate this to her or her husband.[13] The trial court rejected the second ground, disregarding the attorney's "self serving declarations."[14] But the court concluded the attorney did not owe the plaintiff a duty and granted the summary judgment motion.

The Court of Appeal reversed the summary judgment, holding the attorney owed the plaintiff "a duty to inform [her] of her right to pursue a cause of action [for loss of consortium], or to alert her to the need to consult another attorney about it."[15] After a lengthy discussion about California case law on professional liability, the appellate court concluded, "the presence or

---

[8]*Meighan v. Shore, supra,* 34 Cal.App.4th at page 1031.

[9]*Meighan v. Shore, supra,* 34 Cal.App.4th at page 1032.

[10]*Meighan v. Shore, supra,* 34 Cal.App.4th at pages 1029-1030.

[11]*Meighan v. Shore, supra,* 34 Cal.App.4th at pages 1032-1033.

[12]*Meighan v. Shore, supra,* 34 Cal.App.4th at page 1033.

[13]*Meighan v. Shore, supra,* 34 Cal.App.4th at page 1031.

[14]*Meighan v. Shore, supra,* 34 Cal.App.4th at page 1033.

[15]*Meighan v. Shore, supra,* 34 Cal.App.4th at page 1030. The Court of Appeal did not decide whether the attorney owed the plaintiff a duty to inform her of her right to sue for

absence of a client's intent that the plaintiff benefit from or rely upon the attorney's services is particularly significant in the determination of duty."[16] Applying this principle to the facts of the case, the court found: "While the Meighans were unaware of the full extent of their rights, it may be inferred they expected that, if [the attorney] agreed to take the case, he would at least inform them of what they were. That surely was the expectation of [the plaintiff's husband], the acknowledged client. It also was the reasonable expectation of [the plaintiff]."[17] The Court of Appeal explained the "[i]mposition of a duty in this limited situation will not impose an undue burden on the profession. To the contrary, it will vindicate the reasonable expectations of persons who seek legal advice about their rights, the providing of which is the unique office of an attorney."[18]

The *Meighan* court emphasized "the narrowness of [its] holding" and explained "[i]t pertains to the peculiar tort of loss of consortium, where both spouses consult an attorney with respect to a personal injury suffered by one of them and the attorney knows or could readily ascertain that the other spouse has a potential claim for loss of consortium, and where that spouse is unaware of his or her rights."[19] For the reasons set forth below, we find the present case falls outside the scope of the limited duty defined in *Meighan*.

Brent argues his and Estella's interests were completely aligned, just like the couple in *Meighan*. He cites evidence in the record demonstrating that, at the time Hall took the case, Brent and Estella were not legally separated and

---

negligent infliction of emotional distress because the appellate court determined the plaintiff did not have a valid cause of action on that theory. (*Id.* at p. 1044.)

[16]*Meighan v. Shore, supra*, 34 Cal.App.4th at page 1041; see, e.g., *Roberts v. Ball, Hunt, Hart, Brown & Baerwitz* (1976) 57 Cal.App.3d 104, 111 [128 Cal.Rptr. 901] (attorneys who issue legal opinions, such as opinions they know will be shown to and relied upon by third party prospective creditors of their clients, owe a duty "to those they attempted or expected to influence on behalf of their clients"); compare *Goodman v. Kennedy* (1976) 18 Cal.3d 335, 343-344 [134 Cal.Rptr. 375, 556 P.2d 737] (an attorney representing officers of a corporation did not owe a duty to stock purchasers where the attorney gave bad advice to his clients about a potential sale of stock, but there was no indication the client communicated the advice to the stock purchasers, and the stock purchasers "were not persons upon whom [the attorney]'s clients had any wish or obligation to confer a benefit in the transaction"); *Burger v. Pond* (1990) 224 Cal.App.3d 597, 606 [273 Cal.Rptr. 709] (husband's attorney in a dissolution proceeding did not owe a duty to the prospective second wife, even though he knew about the marriage plans, because foreseeability alone does not establish a legal duty); *Flatt v. Superior Court* (1994) 9 Cal.4th 275, 278-279 [36 Cal.Rptr.2d 537, 885 P.2d 950] (an attorney does not have a duty to advise a new or prospective client about the need to file a lawsuit before the statute of limitations runs, or to suggest the new or prospective client seek alternate counsel, once the attorney learns the proposed lawsuit would irreconcilably conflict with the attorney's duty to an existing client).

[17]*Meighan v. Shore, supra*, 34 Cal.App.4th at page 1042.

[18]*Meighan v. Shore, supra*, 34 Cal.App.4th at page 1044.

[19]*Meighan v. Shore, supra*, 34 Cal.App.4th at page 1030.

had no intention to divorce, and Estella was one month pregnant with a child the couple had planned to conceive. He also focuses on the fact the recovery in the wrongful death action is community property. Brent also points out there is no admissible evidence in the record indicating Hall ever asked Estella about the status of her relationship with Brent or whether she blamed Brent for the death of their daughter. Therefore, Brent argues there is no evidence Hall perceived a potential conflict of interest between Brent and Estella.

This position, however, ignores the fact Brent was in his mother's backyard when his daughter drowned in his mother's pool, and Estella was not present. We find the trial court was justified in inferring Hall was aware of the potential conflict of interest and the fact he might face consequences if he agreed to represent both Estella and Brent.

In any event, Brent has ignored the material facts placing this case outside the scope of *Meighan*. Unlike the couple in *Meighan*, Estella and Brent never met together with Hall to seek advice about *their* potential claims arising from their daughter's death. Instead Estella contacted and met with Hall alone to discuss *her* particular legal rights. At no point did Brent ever contact Hall to discuss the wrongful death case or his legal rights. Hall's sole client Estella had no expectation Brent would benefit from or rely on Hall's legal services. Nor is there any evidence Brent himself had any such expectation.

Based on the particular facts of this case, we conclude it would have imposed an undue burden on Hall to require him to contact Brent (who was not living with Estella) so he could advise Brent about his legal rights or suggest Brent contact another lawyer to do so. We are wary about extending an attorney's duty to persons who have not come to the attorney seeking legal advice and whom the attorney has never met. We recognize the awkward position Hall would have found himself in if he were required to seek out Brent and suggest he sue his mother. Beyond that, in this instance we seriously question whether Hall could have engaged in such a discussion with Brent without breaching his duty of loyalty to his existing client, Estella.

Brent next argues Hall at least had a duty to name him as a nominal defendant in the wrongful death action, pursuant to Code of Civil Procedure section 382,[20] even if he did not have a duty to advise him about his "options." In support of this argument, Brent relies on *Ruttenberg v.*

---

[20]Code of Civil Procedure section 382 provides, in pertinent part: "If the consent of any one who should have been joined as plaintiff cannot be obtained, he may be made a defendant, the reason thereof being stated in the complaint . . . ."

*Ruttenberg*.[21] ██ There, the Court of Appeal explained heirs who file a wrongful death action "have a mandatory duty to join all known omitted heirs in the 'single action' for wrongful death. If an heir refuses to participate in the suit as a plaintiff, he or she may be named as a [nominal] defendant so that all heirs are before the court in the same action. An heir named as a defendant in a wrongful [death] action is, in reality, a plaintiff."[22] An heir who was not named as a party and served with the summons and complaint in a wrongful death action has a claim for damages against the heir(s) who failed to join him or her. "An omitted heir's right to a remedy in these circumstances supports the statutory purpose of limiting wrongful death actions to a single proceeding."[23]

██ The *Ruttenberg* case does not discuss nor establish any duty owed by an attorney to an omitted heir, in contrast to the duty the other heirs may owe to that omitted heir. It does, however, establish Brent will not necessarily be without a remedy after the trial court grants summary judgment in favor of Hall. Assuming Brent should have been joined as a nominal defendant in the wrongful death action, *Ruttenberg* instructs his cause of action is against Estella, the plaintiff heir in that action. Brent currently is pursuing this claim below. Based on our review of Estella's deposition testimony, Estella, no doubt, will argue Hall failed to advise her about joining Brent as a nominal defendant in the wrongful death action. In fact, she apparently already has sued Hall for malpractice. Thus, if Brent recovers damages from Estella based on her failure to join him as a nominal defendant, Estella may be entitled to indemnity and contribution from Hall.

We express no opinion on the parties' probability of success on any claim (or potential claim) not before us in this writ proceeding. We simply note, to the extent Brent has a remedy, it is not against Hall. For if Hall had a duty to list Brent as an heir, he owed that duty to his own client, Estella. And if he breached any duty in failing to do so, it was a duty he owed to Estella. Thus, if anyone has a malpractice lawsuit against him, it is Estella and not Brent.

For the foregoing reasons, we conclude the trial court erred when it denied Hall's motion for summary judgment.

### DISPOSITION

Let a peremptory writ of mandate issue directing the respondent superior court to vacate its order of September 5, 2002 denying petitioners' motion

---

[21]*Ruttenberg v. Ruttenberg* (1997) 53 Cal.App.4th 801 [62 Cal.Rptr.2d 78].

[22]*Ruttenberg v. Ruttenberg, supra,* 53 Cal.App.4th at page 808.

[23]*Ruttenberg v. Ruttenberg, supra,* 53 Cal.App.4th at page 809.

for summary judgment, and to issue an order granting the motion. Petitioners are entitled to recover their costs in this writ proceeding.

Perluss, P. J., and Woods, J., concurred.