[No. B199813. Second Dist., Div. Seven. Mar. 16, 2009.]

MYUNG CHANG, Plaintiff and Appellant, v.
GREGORY LEDERMAN, Defendant and Respondent.

68

70

COUNSEL

Law Offices of Dana Moon, Dana M. Dorsett and John Y. Kim for Plaintiff and Appellant.

Nemecek & Cole, Jonathan B. Cole, Michael W. Feenberg and Susan S. Baker for Defendant and Respondent.

OPINION

**PERLUSS, P. J.**—More than a half century ago, in *Biakanja v. Irving* (1958) 49 Cal.2d 647 [320 P.2d 16] (*Biakanja*), the Supreme Court held, notwithstanding the absence of privity, a notary public, engaging in the unauthorized practice of law, who drafted and supervised the execution of a will, owed a duty of care to the beneficiary who lost her inheritance due to his negligence. Three years later, in *Lucas v. Hamm* (1961) 56 Cal.2d 583 [15 Cal.Rptr. 821, 364 P.2d 685] (*Lucas*), the court held beneficiaries whose bequests arguably failed because the testator's lawyer did not adequately safeguard the will from challenge under the rule against perpetuities could assert a claim for professional negligence against the lawyer. Under *Biakanja* and *Lucas* and the appellate cases that explain and apply them, does a testator's lawyer owe a duty of care to a nonclient who alleges she was a potential beneficiary of

the testator's estate in the absence of an executed will or trust instrument expressly reflecting the testator's intent? Does the answer to the question change if the nonclient was previously named in a will or trust instrument executed by the testator and the allegation is the testator intended to revise his or her estate plan to increase the gift to the beneficiary? Because recognizing an expanded duty of care in either situation would place an intolerable burden on the legal profession, we conclude the answer to both questions must be no. Accordingly, we affirm the trial court's order of dismissal and the judgment entered after it sustained without leave to amend Gregory Lederman's demurrer to Myung Chang's second amended complaint for legal malpractice, breach of fiduciary duty and intentional infliction of emotional distress.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *The Raphael Schumert 2004 Revocable Trust, the First Amendment to the Trust and Raphael Schumert's Death*

Raphael Schumert, a physician, and Chang, a registered nurse, met while working at a hospital in 1994.[1] They lived together for several years before marrying on August 27, 2004.

In early 2004, approximately six months before his marriage to Chang, but while living with her, Schumert, who had been diagnosed with terminal cancer, retained Lederman, a probate attorney and estate planner, to prepare a revocable trust. The Raphael Schumert 2004 Revocable Trust, executed on March 2, 2004, provided for two specific distributions upon Schumert's death: $30,000, as well as the furniture and television sets located at Schumert's principal place of residence in Sherman Oaks, to Chang; and

---

[1] Our description of the factual background for Chang's claims is based on the allegations in Chang's second amended complaint, which we accept as true to determine whether Lederman's demurrer should have been sustained or overruled. (*Caliber Bodyworks, Inc. v. Superior Court* (2005) 134 Cal.App.4th 365, 373 [36 Cal.Rptr.3d 31]; *Casterson v. Superior Court* (2002) 101 Cal.App.4th 177, 182–183 [123 Cal.Rptr.2d 637] ["[t]he reviewing court accepts as true all facts properly pleaded in the complaint in order to determine whether the demurrer should be overruled"]; see *Mack v. Soung* (2000) 80 Cal.App.4th 966, 971 [95 Cal.Rptr.2d 830] [all properly pleaded allegations deemed true, regardless of plaintiff's ability to later prove them].) Chang's allegations are supplemented by information included in the findings of fact and final order from the probate court proceedings following Schumert's death, which were judicially noticed by the trial court at the request of Lederman. (See *Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 20 [40 Cal.Rptr.3d 205, 129 P.3d 394] [demurrer tests sufficiency of complaint based on facts included in the complaint, those subject to judicial notice and those conceded by plaintiffs]; *McKell v. Washington Mutual, Inc.* (2006) 142 Cal.App.4th 1457, 1491 [49 Cal.Rptr.3d 227] [in ruling on demurrer, court may " 'take judicial notice of a party's early pleadings and positions as well as established facts from both the same case and other cases' "].)

$10,000 to Wenna Tancio. The residue of the trust estate (identified in an attachment to the trust instrument) was left to Schumert's only child, Roy Schumert, in trust.[2] Schumert identified himself as his trust's initial trustee; his former wife and Roy Schumert's mother, Etti Hadar, was named as first successor trustee. The trust also provided that, following Schumert's death, the Sherman Oaks residence was to be sold by his successor trustee or leased to a third party for a fair market rent. The trust specified "Chang must vacate [the Sherman Oaks residence] within thirty (30) days of my death."

On April 15, 2004 Schumert executed a first amendment to the Raphael Schumert 2004 Revocable Trust, also prepared by Lederman. The amendment reduced the sum to be distributed to Chang from $30,000 to $15,000, eliminated entirely the distribution to Tancio and recited, "In all other respects, the trust remains unchanged."

During the same period, in late March 2004, Schumert executed a will to dispose of his assets in Israel. A second will was subsequently executed by Schumert in Israel, following his marriage to Chang, which apparently did not provide for Chang in any way and did not expressly revoke the Raphael Schumert 2004 Revocable Trust, as amended.

According to Chang's pleading, on or about February 1, 2005, five to six months following their marriage, Schumert, who was now seriously ill, instructed Lederman to revise his trust to leave the entire trust estate to Chang (with the understanding Chang would give Roy Schumert the sum of $250,000 when he turned 25). Lederman refused and told Schumert, if he modified the trust, Schumert would be sued by Hadar. Lederman also advised Schumert he should have a psychiatric evaluation before making any changes to his estate plan. Schumert died on March 17, 2005 without making any further amendments to the trust.

### 2. *The Probate Proceedings*

After Schumert's death, Hadar, as trustee of the Raphael Schumert 2004 Revocable Trust, retained Lederman to represent her in the administration of the trust. In that capacity on April 1, 2005 Lederman wrote Chang and requested she vacate the Sherman Oaks residence by April 17, 2005 as provided in the trust (30 days after Schumert's death on Mar. 17, 2005).

On April 12, 2005 Hadar initiated formal probate proceedings. For her part, Chang filed an action in probate court seeking to revoke the trust and

---

[2] Documents in the record on appeal indicate Roy Schumert celebrated his bar mitzvah in September 2004, suggesting he was approximately 12 and one-half years old at the time the trust was executed in March 2004.

awarding her a one-half interest in the estate under the "omitted spouse" doctrine. The probate court ruled the will executed by Schumert in Israel following the marriage precluded application of that doctrine and also found the Raphael Schumert 2004 Revocable Trust was valid and had not been revoked or invalidated by the subsequent will. In addition, the court ruled Chang's action violated the no contest provision in the trust, which revoked the $15,000 bequest to Chang in the trust.

### 3. Chang's Complaint for Breach of Fiduciary Duty, Professional Negligence and Intentional Infliction of Emotional Distress

On March 16, 2006 Chang filed this lawsuit against Lederman, asserting causes of action for breach of fiduciary duty, breach of ethical duties of attorney, professional negligence and intentional infliction of emotional distress. The gravamen of Chang's lawsuit, as she describes it, is that Lederman, in his capacity as Schumert's probate attorney, breached his legal duty of care owed to Chang, in her capacity as an intended third party beneficiary of her husband's will and trust, by refusing and failing to revise the trust and will to comply with Schumert's expressly communicated intent to bequeath to her his entire estate located in the United States (valued, according to Chang, at more than $600,000). The complaint also alleged Lederman's subsequent representation of Hadar, as successor trustee of the trust, whose interests were adverse to Chang's, was a breach of Lederman's ethical duties to Chang. Finally, the complaint alleged Lederman's demand that Chang move out of the Sherman Oaks residence shortly after the death of her husband "was extreme, outrageous and humiliating."

The trial court sustained Lederman's demurrer to the complaint on August 8, 2006, concluding Chang had failed to adequately allege she was the intended beneficiary of Schumert's testamentary documents or otherwise allege facts establishing that Lederman owed her a duty of care. The court also found she had failed to allege the necessary elements for intentional infliction of emotional distress. Chang was granted leave to amend.

The first amended complaint, filed on August 28, 2006, eliminated the claim for breach of ethical duties of attorney and modified other language in the pleading. Chang now expressly alleged she was an intended beneficiary of the trust and Lederman was retained by Schumert for the purpose of benefiting beneficiaries, including Chang, of the trust. Chang also alleged, as part of her claim for intentional infliction of emotional distress, that Lederman knew the probate homestead provision would protect her from

having to move from the Sherman Oaks residence shortly after her husband's death,[3] but nonetheless failed to advise her of that provision and insisted she leave the residence.

On November 30, 2006 the court sustained Lederman's demurrer to the first amended complaint with leave to amend. The court again ruled Chang had failed to allege facts that would establish she was an intended beneficiary of the trust (other than for the $15,000 gift) or would create a duty of care to her. As to the claim for intentional infliction of emotional distress, the court found Lederman's letter demanding Chang leave the Sherman Oaks residence, sent pursuant to the express provision of the trust and on behalf of the trust's successor trustee, was absolutely privileged under Civil Code section 47, subdivision (b).

The second amended complaint was filed on January 3, 2007. Lederman's demurrer was sustained without leave to amend on March 13, 2007. Once again the court ruled the operative facts alleged by Chang did not give rise to a duty owed by Lederman, the testator's lawyer, to Chang, a potential beneficiary with respect to the alleged plan to revise the trust documents to increase the gift to her. The absence of duty defeated the claims for both legal malpractice and breach of fiduciary obligation. As to the cause of action for intentional infliction of emotional distress, which was largely unchanged from the first amended complaint, the court found Chang had failed to plead facts establishing extreme and outrageous conduct by Lederman with the intention of causing severe emotional distress. The court ordered the action dismissed; and a judgment was entered, including an award of costs, on April 3, 2007.

## DISCUSSION

### 1. Standard of Review

On appeal from an order dismissing an action after the sustaining of a demurrer, we independently review the pleading to determine whether the facts alleged state a cause of action under any possible legal theory. (*McCall v. PacifiCare of Cal., Inc.* (2001) 25 Cal.4th 412, 415 [106 Cal.Rptr.2d 271,

---

[3] Probate Code section 6500 provides, until the inventory is filed in a pending probate proceeding and for a period of 60 days thereafter, the decedent's surviving spouse and minor children are entitled to remain in possession of the family dwelling. Probate Code section 6520 et seq. provides, during the administration of a probate estate, the court may set apart one probate homestead for the use of the surviving spouse and the minor children of the decedent. We need not decide the extent to which these provisions protect a widow in Chang's position, that is, in a situation in which there apparently is no community property or quasi-community property, the decedent and the surviving widow did not own property in common, and the widow is the express beneficiary of a gift of cash and personal property in an inter vivos trust and is otherwise excluded from any participation in the decedent's estate.

21 P.3d 1189]; *Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967 [9 Cal.Rptr.2d 92, 831 P.2d 317].) We give the complaint a reasonable interpretation, "treat[ing] the demurrer as admitting all material facts properly pleaded," but do not "assume the truth of contentions, deductions or conclusions of law." (*Aubry*, at p. 967; accord, *Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126 [119 Cal.Rptr.2d 709, 45 P.3d 1171].) We liberally construe the pleading with a view to substantial justice between the parties. (Code Civ. Proc., § 452; *Kotlar v. Hartford Fire Ins. Co.* (2000) 83 Cal.App.4th 1116, 1120 [100 Cal.Rptr.2d 246].)

## 2. *The Law Regarding Liability for Negligence in Estate Planning to Intended or Potential Beneficiaries*

To state a cause of action for legal malpractice, a plaintiff must plead "(1) the duty of the attorney to use such skill, prudence, and diligence as members of his or her profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the breach and the resulting injury; and (4) actual loss or damage resulting from the attorney's negligence." (*Coscia v. McKenna & Cuneo* (2001) 25 Cal.4th 1194, 1199 [108 Cal.Rptr.2d 471, 25 P.3d 670].) " ' "A key element of any action for professional malpractice is the establishment of a duty by the professional to the claimant. Absent duty there can be no breach and no negligence." ' " (*Moore v. Anderson Zeigler Disharoon Gallagher & Gray* (2003) 109 Cal.App.4th 1287, 1294 [135 Cal.Rptr.2d 888] (*Moore*).) Whether a lawyer sued for professional negligence owed a duty of care to the plaintiff "is a question of law and depends on a judicial weighing of the policy considerations for and against the imposition of liability under the circumstances." (*Goodman v. Kennedy* (1976) 18 Cal.3d 335, 342 [134 Cal.Rptr. 375, 556 P.2d 737]; see *Osornio v. Weingarten* (2004) 124 Cal.App.4th 304, 319 [21 Cal.Rptr.3d 246] (*Osornio*) ["the existence of the attorney's duty of care owing to the plaintiff is generally a question of law that may be addressed by demurrer"].)

### a. *The traditional rule of privity and the Supreme Court's decisions in* Biakanja, Lucas *and* Heyer v. Flaig

The traditional rule in California, as in other jurisdictions, was an attorney could be held liable only to his or her client with respect to actions based on professional negligence. (See, e.g., *Buckley v. Gray* (1895) 110 Cal. 339, 342–343 [42 P. 900] [lack of privity of contract precludes a lawyer's liability to an intended beneficiary for negligence in drafting a will and directing its execution].) "[I]t was reasoned that there could be no recovery for mere negligence where there was no privity by contract or otherwise between the defendant and the person injured." (*Lucas, supra,* 56 Cal.2d at p. 588; see generally *Goodman v. Kennedy, supra,* 18 Cal.3d at pp. 342–344.)

The strict privity test for professional liability was rejected in *Biakanja, supra,* 49 Cal.2d 647, in which the Supreme Court considered the liability of a notary public who had negligently allowed the will of the plaintiff's brother, which left the entire estate to the plaintiff, to be improperly attested. As a result, the plaintiff received only his one-eighth intestate succession share of the estate. The court held the notary public owed a duty of reasonable care to the plaintiff and that duty had been breached. (*Id.* at p. 650.) In reaching its conclusion the court was careful not to declare an unlimited scope of liability in favor of any person who might have been injured from the negligent performance of the defendant's contract with another party. "The determination whether in a specific case the defendant will be held liable to a third person not in privity is a matter of policy and involves the balancing of various factors, among which are the extent to which the transaction was intended to affect the plaintiff, the foreseeability of harm to him, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, and the policy of preventing future harm." (*Ibid.*)

In *Lucas, supra,* 56 Cal.2d 583, the Supreme Court applied the *Biakanja* factors to determine whether an attorney may be liable to the intended beneficiaries of a deceased testator for losses resulting from negligence in drafting a will. (*Id.* at p. 588 ["same general principle [articulated in *Biakanja*] must be applied in determining whether a beneficiary is entitled to bring an action for negligence in the drafting of a will when the instrument is drafted by an attorney rather than by a person not authorized to practice law"].) The residuary trust in the will prepared by the defendant contained language that arguably violated the rule against perpetuities and statutory restrictions relating to restraints on alienation. As a result, after the testator died, the plaintiffs entered into a settlement with certain of the testator's relatives under which they received a share of the estate significantly less than they would have received pursuant to testamentary instruments property drafted in accordance with the directions of the testator. (*Id.* at pp. 586–587.)

Because the defendant in *Lucas* was an attorney, however, in addition to the *Biakanja* factors the court held it was necessary to consider "whether the recognition of liability to beneficiaries of wills negligently drawn by attorneys would impose an undue burden on the profession." (*Lucas, supra,* 56 Cal.2d at p. 589.) The court concluded the extension of a drafting attorney's liability to "beneficiaries injured by a negligently drawn will" did not threaten an undue burden on the legal profession[4] and held the other factors identified

---

[4] In *Goodman v. Kennedy, supra,* 18 Cal.3d at page 344, the Supreme Court explained that, in evaluating whether recognizing a cause of action for negligence would impose an undue burden on the profession, the courts should also consider whether imposing liability would

in *Biakanja* supported recognition of a cause of action for professional negligence in these circumstances. (56 Cal.2d at p. 589.) "As in *Biakanja*, one of the main purposes which the transaction between defendant and the testator intended to accomplish was to provide for the transfer of property to plaintiffs; the damage to plaintiffs in the event of invalidity of the bequest was clearly foreseeable; it became certain, upon the death of the testator without change of the will, that plaintiffs would have received the intended benefits but for the asserted negligence of defendant; and if persons such as plaintiffs are not permitted to recover for the loss resulting from negligence of the draftsman, no one would be able to do so and the policy of preventing future harm would be impaired." (*Ibid.*)[5]

In *Heyer v. Flaig* (1969) 70 Cal.2d 223 [74 Cal.Rptr. 225, 449 P.2d 161], disapproved on other grounds in *Laird v. Blacker* (1992) 2 Cal.4th 606, 617 [7 Cal.Rptr.2d 550, 828 P.2d 691], a case that primarily involved the statute of limitations in legal malpractice actions, the Supreme Court reaffirmed the basic principles of *Biakanja* and *Lucas*, explaining that the basis for tort liability to an intended beneficiary in the absence of privity with the defendant was a breach of duty owed directly to the beneficiary. "When an attorney undertakes to fulfill the testamentary instructions of his client, he realistically and in fact assumes a relationship not only with the client but also with the client's intended beneficiaries. The attorney's actions and omissions will affect the success of the client's testamentary scheme; and thus the possibility of thwarting the testator's wishes immediately becomes foreseeable. Equally foreseeable is the possibility of injury to an intended beneficiary. In some ways, the beneficiary's interests loom greater than those of the client. After the latter's death, a failure in his testamentary scheme works no practical effect except to deprive his intended beneficiaries of the intended bequests . . . only the beneficiaries suffer the real loss." (*Heyer*, at p. 228.)

The plaintiffs in *Heyer*, the two daughters of the testator and her sole beneficiaries, alleged the defendant attorney had failed to advise their mother that omitting a provision in her will concerning her intended marriage could result in her new husband's assertion of a claim to a portion of her estate if she predeceased him (under a now repealed provision of the Prob. Code).

impinge on the lawyer's ethical duties to his or her client. (See *Moore, supra,* 109 Cal.App.4th at p. 1295; *Boranian v. Clark* (2004) 123 Cal.App.4th 1012, 1019 [20 Cal.Rptr.3d 405].)

[5] Although holding the lack of privity between the intended beneficiaries and the drafting attorney did not preclude an action in tort against the attorney, the Supreme Court also famously held, "[i]n view of the state of the law relating to perpetuities and restraints on alienation," a drafting error that arguably invalidated the trust provisions in the will did not constitute negligence: "[A]n attorney of ordinary skill acting under the same circumstances might well have 'fallen into the net which the Rule spreads for the unwary' and failed to recognize the danger." (*Lucas, supra,* 56 Cal.2d at pp. 592–593.)

Applying *Lucas* the Supreme Court concluded, "A reasonably prudent attorney should appreciate the consequences of a post-testamentary marriage, advise the testator of such consequences, and use good judgment to avoid them if the testator so desires." (*Heyer v. Flaig, supra,* 70 Cal.2d at p. 229.)

### b. Subsequent case law refining the duty of lawyers to intended beneficiaries

The *Biakanja* and *Lucas* principles, which originated in cases involving the negligent drafting or execution of wills, were extended to permit a suit by trust beneficiaries in *Bucquet v. Livingston* (1976) 57 Cal.App.3d 914 [129 Cal.Rptr. 514]. In *Bucquet* the beneficiaries of an inter vivos trust alleged the lawyer for the trustors (a husband and wife) had negligently included a general power of appointment in the trust, creating significant, unintended tax consequences that, following one of the trustors' death, reduced the share of the trust ultimately received by the beneficiaries. (*Id.* at pp. 917, 920.) The Court of Appeal observed there was no rational basis for distinguishing a trust instrument and a will for purposes of recognizing the drafting lawyer's duty of care to intended beneficiaries (*id.* at p. 922) and held the creation of the trust involved "was directly intended to affect the beneficiaries and the avoidance of federal estate tax and state inheritance tax was directly related to the amounts that [the husband] intended the beneficiaries to receive after [the wife's] death." (*Id.* at p. 923.)

In *Garcia v. Borelli* (1982) 129 Cal.App.3d 24 [180 Cal.Rptr. 768] the beneficiaries (residual legatees) of a will alleged the lawyer for the testator, who was the father of one of the beneficiaries and the grandfather of the others, failed to adequately advise the testator to ensure that property, held only for convenience in joint tenancy with his second wife, would in fact be treated as community property following his death. Although the will itself declared the interests to be community property, the dispute between the second wife and the residual beneficiaries led to a settlement in the probate proceedings and then to the beneficiaries' suit against the lawyer for the amount they surrendered because of the uncertainty regarding the form of title. The court held, "It is settled that intended beneficiaries of a will who lose their testamentary rights because of failure of the attorney who drew the will to properly fulfill his obligations under his contract with the testator may recover damages . . . on a tort liability for breach of duty owed directly to the beneficiaries." (*Id.* at p. 32.)

A more recent appellate decision, *Osornio, supra,* 124 Cal.App.4th 304, recognized the right of an intended beneficiary, who was the care custodian of the testator, a dependent adult, to pursue a legal malpractice action against the attorney who drafted the testator's will naming her as executor and sole

beneficiary. The plaintiff had alleged the lawyer was negligent in failing to advise the testator that his intended beneficiary was a presumptively disqualified donee under Probate Code section 21350, subdivision (a)(6), and in failing to take appropriate measures to ensure the testator's wishes were carried out by referring her to counsel to obtain a certificate of independent review under Probate Code section 21351, subdivision (b). (*Osornio*, at pp. 312–313, 329.) After a comprehensive review of California decisions considering legal malpractice claims by nonclients and balancing the *Biakanja/Lucas* factors, the Court of Appeal held, "The case before us is similar to other cases in which courts have imposed a duty of care upon attorneys where beneficiaries are deprived of intended transfers of property as a result of failed wills or trusts." (*Id.* at p. 332.) With respect to the potential burden on the profession, the court explained, "Imposing liability in this instance would not compromise the attorney's duty of undivided loyalty to the testator. The attorney's duty here was to take appropriate action to carry out the testator's wishes—that were *expressed and formalized* in her signed will—that her intended beneficiary, Osornio, inherit her entire estate." (*Id.* at p. 336.)

In finding a duty of care to the intended beneficiary in *Osornio, supra*, 124 Cal.App.4th 304, our colleagues in the Sixth District distinguished their earlier decision in *Radovich v. Locke-Paddon* (1995) 35 Cal.App.4th 946 [41 Cal.Rptr.2d 573] (*Radovich*), which it described as involving "the malpractice claim of a *potential* beneficiary identified in an *unsigned* will." (*Osornio*, at p. 324, original italics.) In *Radovich* the plaintiff had been named as an income beneficiary under a charitable remainder trust in a will drafted by the testator's attorney. (*Radovich*, at p. 952.) The attorney delivered the draft will to the testator, who died approximately two months later without having signed it. (*Ibid.*) The plaintiff alleged the lawyer was negligent in failing to have his client properly execute the will prior to his death. (*Id.* at p. 953.) The *Radovich* court held the lawyer owed no duty of care to the potential beneficiary under these circumstances, reasoning that "imposition of liability in a case such as this could improperly compromise an attorney's primary duty of undivided loyalty to his or her client, the decedent." (*Id.* at p. 965; see *Osornio*, at p. 325.) The court further explained, "[W]e see both practical and policy reasons for requiring more evidence of commitment than is furnished by a direction to prepare a will containing specified provisions. From a practical standpoint, common experience teaches that potential testators may change their minds more than once after the first meeting. . . .[6] From a policy standpoint, we must be sensitive to the potential for misunderstanding and the difficulties of proof inherent in the fact that disputes such as these will not arise until the decedent—the only person who can say what he or she

---

[6] Common experience also teaches that testators may not be completely candid when describing their intentions to potential beneficiaries.

intended—has died. Thus we must as a policy matter insist on the clearest manifestation of commitment the circumstances will permit." (*Radovich*, at p. 964.)

■ The *Osornio* court emphasized this difference between the failed bequest in the case before it and the frustration of the potential beneficiary's expectations in *Radovich*: "In that instance, there was no plain expression of the testator's intention to benefit the plaintiff . . . . In contrast, here we have a clear expression of [the testator's] intention that Osornio be her sole beneficiary under the signed 2001 Will." (*Osornio, supra*, 124 Cal.App.4th at p. 336.) That is, to hold an attorney owed a duty of care not only to his or her testator client but also to an intended beneficiary, the testator's intent must be "*expressed* and *formalized* in [a] signed will." (*Ibid.*)

Similarly, the court in *Ventura County Humane Society v. Holloway* (1974) 40 Cal.App.3d 897, 903 [115 Cal.Rptr. 464], concluded the absence of a formalized expression of the testator's intent precluded recognition of a duty of care to a potential beneficiary: "[A]n attorney may be held liable to the testamentary beneficiaries only if the [*Biakanja/Lucas*] test is fully met, that is, if due to the attorney's professional negligence the testamentary intent expressed in the will is frustrated and the beneficiaries clearly designated by the testator lose their legacy as a direct result of such negligence." (Italics omitted.) In that case a lawyer had drafted a will, using information provided by the testator, with a substantial bequest to a nonexistent animal rights organization ("Society for the Prevention of Cruelty to Animals (Local or National)"). The court held the lawyer owned no duty to a class of potential beneficiaries (charities, including the Ventura County Humane Society) to establish the "true intention" of the testator, finding the allegation that the lawyer had negligently drafted the will using ambiguous and ineffectual language failed to allege "the crucial elements upon which [the lawyer's] duty may be predicated." (*Id.* at p. 906.) "[W]hen, as in the case at bench, the testamentary intent has been implemented, no good reason exists why the attorney should be held accountable for using certain words suggested or selected by the testator which later prove to be ambiguous. In addition, the task of proving whether claimed ambiguity was the result of negligence of the drafting attorney or whether it was the deliberate choice of the testator, would impose an insurmountable burden on the parties, since in such a case the trier of fact would be required to decide this crucial issue without the benefit of the testimony of the most important witness, the testator himself." (*Id.* at p. 905; see *Boranian v. Clark, supra*, 123 Cal.App.4th at pp. 1019–1020 ["a lawyer who is persuaded of his client's intent to dispose of her property in a certain manner, and who drafts the will accordingly, fulfills his duty of loyalty to his client and is not required to urge the testator to consider an alternative plan in order to forestall a claim by someone thereby excluded from the will (or included in the will but deprived of a specific asset

bequeathed to someone else)"]; *Moore, supra,* 109 Cal.App.4th at p. 1302 [lawyer does not have duty to beneficiaries under a will to evaluate and ascertain the testamentary capacity of a client seeking to amend his or her will or to make a new will]; see also *Hiemstra v. Huston* (1970) 12 Cal.App.3d 1043 [91 Cal.Rptr. 269] [son claimed properly executed will did not express his father's true testamentary intentions; lawyer owed no duty to son to ascertain testator's true intent].)

3. *The Trial Court Properly Sustained the Demurrers to the Professional Negligence and Breach of Fiduciary Duty Claims Without Leave to Amend Because Lederman Owed No Duty of Care to Chang As the Potential Beneficiary of a Greater Share of His Client's Trust Estate*

█ As discussed in the preceding section, California decisions recognize an enforceable duty of care in cases involving a negligently drafted or executed testamentary instrument when the plaintiff was an *expressly named* beneficiary of an *express bequest*—in the words of the *Lucas* court, a duty of care "to beneficiaries injured by a negligently drawn will." (*Lucas, supra,* 56 Cal.2d at p. 589.) In each of those cases the wills or trusts did not fail because of any defect in the expression of the testator's intent, but because of some failure either in other language of the instrument or in the circumstances of its execution. (See, e.g., *Biakanja, supra,* 49 Cal.2d 647 [will failed because of improper attestation]; *Lucas,* at pp. 587, 592 [bequest arguably failed because it violated rule against perpetuities ]; *Heyer v. Flaig, supra,* 70 Cal.2d 223 [bequest failed because attorney did not provide for effect of testator's later marriage]; *Garcia v. Borelli, supra,* 129 Cal.App.3d 24 [bequest failed because testator's declaration in will regarding nature of his property was insufficient]; *Bucquet v. Livingston, supra,* 57 Cal.App.3d 914 [marital deduction technique failed]; *Osornio, supra,* 124 Cal.App.4th 304 [bequest challenged because there was no certificate of independent review as to the caregiver-beneficiary].)

Conversely, when the claim—as here—is that a will or trust, although properly executed and free of other legal defects, did not accurately express the testator's intent, no duty or liability to the nonclient potential beneficiary has been recognized. That is, where there is a question about whether the third party beneficiary was, in fact, the decedent's intended beneficiary— where intent is placed in issue—the lawyer will not be held accountable to the potential beneficiary. (*Boranian v. Clark, supra,* 123 Cal.App.4th at pp. 1012, 1017; see *id.* at pp. 1018 ["liability to a third party will not be imposed where there is a substantial question about whether the third party was in fact the decedent's *intended* beneficiary"], 1019–1021 [no duty owed to potential beneficiary to determine testator's testamentary capacity]; *Moore,*

*supra*, 109 Cal.App.4th at pp. 1298–1307 [same]; *Radovich, supra*, 35 Cal.App.4th at pp. 955–966 [no duty owed to named beneficiary to get will finalized and signed].)

To be sure, accepting as true the factual allegations of the second amended complaint, as we must, at least four of the six *Biakanja/Lucas* factors point toward extending Lederman's duty of care to include Chang.[7] Thus, Chang has alleged, following their marriage in August 2004, Schumert advised Lederman of his desire to leave his entire estate to Chang and instructed Lederman to prepare a further amendment to the Raphael Schumert 2004 Revocable Trust to that end—indicating both the transaction at this point was intended to directly affect Chang (the first factor) and it was plainly foreseeable Lederman's failure to exercise due care in carrying out Schumert's instructions would harm Chang (the second factor). Chang has also alleged she suffered injury as a result of Schumert's negligence (the third factor); and from the allegations in her complaint there appear to be no intervening circumstances that might have broken the causal connection between Lederman's conduct and Chang's damage (the fourth factor). The policy of preventing future harm, the fifth factor, is less clear, given the absence of an express bequest of the entire estate to Chang; but accepting her allegations, imposing a duty of care enforceable by the prospective beneficiary under these circumstances would arguably encourage a higher quality of legal practice by counsel representing testators, settlors and other clients making donative transfers.

The difficulty, of course, is that any disappointed potential beneficiary—even a total stranger to the testator—could make factual allegations similar in most respects to those in the second amended complaint; and, without requiring an explicit manifestation of the testator's intentions, the existence of a duty—a legal question—would always turn on the resolution of disputed facts and could never be decided as a matter of law. If a complaint alleges the decedent intended to benefit the plaintiff and the lawyers responsible for the decedent's estate plan were aware of that intent, no more would be required to survive a demurrer.

---

[7] "To reiterate, these factors are: '[1] the extent to which the transaction was intended to affect the plaintiff, [2] the foreseeability of harm to him, [3] the degree of certainty that the plaintiff suffered injury, [4] the closeness of the connection between the defendant's conduct and the injury . . . [5] the policy of preventing future harm' . . . and [6] 'whether the recognition of liability to beneficiaries of wills negligently drawn by attorneys would impose an undue burden on the profession.' " (*Osornio, supra*, 124 Cal.App.4th at p. 330, quoting *Lucas, supra*, 56 Cal.2d at p. 588.) Courts have generally disregarded the "moral blame" factor in evaluating an attorney's duty to a nonclient. (See *id.* at p. 321, fn. 15; see generally 1 Mallen & Smith, Legal Malpractice (2009 ed.) Liability To The Nonclient—Negligence, § 7.8, p. 913 [identifying "six-criteria balancing test" under California law, excluding the "moral blame" factor identified in *Biakanja, supra*, 49 Cal.2d at p. 650, and including the "burden on the profession" factor articulated in *Lucas*, at p. 589].)

For this reason, we conclude, as have the other appellate courts to consider a similar issue, the sixth factor—whether extension of liability would "impose an undue burden on the profession" (*Lucas, supra,* 56 Cal.2d at p. 589)—mandates rejection of the argument that estate planners owe a duty of care to unnamed potential beneficiaries. (See *Boranian v. Clark, supra,* 123 Cal.App.4th at pp. 1012, 1017; *Moore, supra,* 109 Cal.App.4th at pp. 1298–1307; *Radovich, supra,* 35 Cal.App.4th at pp. 955–966.) Without a finite, objective limit on the identity of individuals to whom they owe a duty of care, the burden on lawyers preparing wills and trusts would be intolerable.

Chang purports not to disagree with this analysis limiting a lawyer's duty of care to nonclients in these situations to expressly named beneficiaries of express bequests, but asserts she was, in fact, such an expressly named beneficiary because she was identified as the recipient of a $15,000 gift in the executed amended trust. As a result of her status as a named intended beneficiary, Chang contends Lederman owed her a duty of care not only with respect to the $15,000 gift itself but also as to Schumert's proposed revision of his estate plan to bequeath to her his entire estate located in the United States.[8] Chang's argument fundamentally misapprehends the limited exception to the strict privity requirement for legal malpractice cases created in *Lucas* and applied in subsequent appellate decisions.

■ As discussed, in *Lucas, supra,* 56 Cal.2d at page 589 the Supreme Court recognized only the potential liability of lawyers to "beneficiaries of wills negligently drawn by attorneys," concluding that "the extension of [their] liability to beneficiaries injured by a negligently drawn will does not place an undue burden on the profession." (*Ibid.*) That is, *Lucas* did not recognize a general duty of care enforceable either by all potential third party beneficiaries or, as Chang suggests, by intended beneficiaries once expressly named in a will, but rather a limited duty, enforceable by the intended beneficiary, to exercise ordinary care and skill to properly effectuate a bequest expressly set forth in the testamentary document. As the court explained in *Heyer v. Flaig, supra,* 70 Cal.2d at page 229, "[a]lthough the duty accrues directly in favor of the intended testamentary beneficiary, the scope of the duty is determined by reference to the attorney-client context." That duty is simply "to act with due care as to the interests of the intended beneficiary" as reflected in a failed or challenged will or trust. (*Ibid.*; accord, *Ventura County Humane Society v. Holloway, supra,* 40 Cal.App.3d at p. 903 [attorney's duty

---

[8] At oral argument Chang's counsel conceded Lederman did not owe Chang any fiduciary duties. Nonetheless, without identifying the source of the duty, because Chang was an expressly named beneficiary of the trust, she insisted Lederman owed Chang a general duty of care that extended far beyond the requirement he exercise ordinary skill in drafting the trust so as to preserve the $15,000 gift to her.

to testamentary beneficiaries limited to competently implementing testamentary intent expressed in will].)

The limited nature of the duty of care owed to intended beneficiaries expressly named in a testamentary document was explained in *Moore, supra*, 109 Cal.App.4th 1287, which involved a legal malpractice action filed by five adult children against the attorney who had prepared and then amended their deceased father's estate planning documents. The estate plan as it existed by virtue of the 1999 amendments prepared by the attorney, in accordance with the father's wishes, made sizeable gifts to eight of his children (including the five plaintiffs) but did not include any bequest to the ninth child, Michael. The father became terminally ill by June 2000 and, according to the complaint for malpractice, lacked the capacity to know or understand his estate plan. Nevertheless, the attorney prepared new estate planning documents that fundamentally changed the plan and made a substantial gift to Michael. The father died shortly after executing the amendments to his trusts and a new will. (*Moore*, at pp. 1291–1292.) Litigation ensued, followed by a settlement pursuant to which the children other than Michael were awarded only a portion of what they would have received under the plan as it had existed in September 1999. In their malpractice action the plaintiffs alleged the lawyer had breached his duty of care to effectuate his client's intent to benefit the eight children who were the express beneficiaries of the September 1999 estate planning documents by failing to determine their father's testamentary competence at the time the June 2000 revisions were made and executed. (*Id.* at pp. 1291–1292.)

After reviewing *Lucas, Heyer* and related appellate cases, the *Moore* court held the testator's attorney owned no such duty to the beneficiaries named in the existing estate plan: "[A]n attorney preparing a will for a testator *owes no duty to the beneficiary of the will or to the beneficiary under a previous will* to ascertain and document the testamentary capacity of the client." (*Moore, supra*, 109 Cal.App.4th at p. 1298.) Recognizing such a duty to the named beneficiaries, the court explained, would subject attorneys to "conflicting duties to different sets of beneficiaries" and place the testator's attorney in the position of "potential liability to either the beneficiaries disinherited if the attorney prepares the will or to the potential beneficiaries of the new will . . . ." (*Id.* at p. 1299.) Yet that is precisely the result Chang argues for here—creating a general duty of care to intended beneficiaries, once named in a testamentary document, notwithstanding the impossible conflicting duties that would have been created between Chang and Schumert's son Roy, who was expressly named as the primary beneficiary in the amended Raphael Schumert 2004 Revocable Trust. (See also *Boranian v. Clark, supra*, 123 Cal.App.4th at p. 1019 ["while out of an agreement to provide legal services to the testator, a duty also arises to act with due care with regard to the

interests of the *intended beneficiary, the scope of duty owed to the beneficiary is determined by reference to the attorney-client relationship*" (italics added)].)

■ Accordingly, we conclude a testator's attorney owes no duty to a person in the position of Chang, an expressly named beneficiary who attempts to assert a legal malpractice claim not on the ground her actual bequest (here, the $15,000 gift) was improperly perfected but based on an allegation the testator intended to revise his or her estate plan to increase that bequest and would have done so but for the attorney's negligence. Expanding the attorney's duty of care to include actual beneficiaries who could have been, but were not, named in a revised estate plan, just like including third parties who could have been, but were not, named in a bequest, would expose attorneys to impossible duties and limitless liability because the interests of such potential beneficiaries are always in conflict. (See *Moore, supra*, 109 Cal.App.4th at p. 1299.) Moreover, the results in such lawsuits, if allowed, would inevitably be speculative because the claim necessarily will not arise until the testator or settlor, the only person who can say what he or she intended or explain why a previously announced intention was subsequently modified, has died. (*Radovich, supra*, 35 Cal.App.4th at p. 964; *Ventura County Humane Society v. Holloway, supra*, 40 Cal.App.3d at p. 905.)

■ Because Chang's allegation she was the intended beneficiary of the entirety of Schumert's estate is not based on an express bequest in an executed will or trust, Lederman owed her no duty of care. Her claims for both legal malpractice and breach of fiduciary duty fail as a matter of law.

4. *The Trial Court Properly Sustained the Demurrer to the Claim for Intentional Infliction of Emotional Distress Without Leave to Amend*

■ "The elements of a prima facie case of intentional infliction of emotional distress consist of: (1) extreme and outrageous conduct by the defendant with the intent to cause, or reckless disregard for the probability of causing, emotional distress; (2) suffering of severe or extreme emotional distress by the plaintiff; and (3) the plaintiff's emotional distress is actually and proximately the result of the defendant's outrageous conduct." (*Conley v. Roman Catholic Archbishop* (2000) 85 Cal.App.4th 1126, 1133 [102 Cal.Rptr.2d 679]; see *Cole v. Fair Oaks Fire Protection Dist.* (1987) 43 Cal.3d 148, 155, fn. 7 [233 Cal.Rptr. 308, 729 P.2d 743].) Extreme and outrageous conduct is conduct that is " ' "so extreme as to exceed all bounds of that usually tolerated in a civilized community" ' " (*Potter v. Firestone Tire & Rubber Co.* (1993) 6 Cal.4th 965, 1001 [25 Cal.Rptr.2d 550, 863 P.2d 795]) and must be " 'of a nature which is especially calculated to cause, and does

cause, mental distress.' " (*Cole*, at p. 155, fn. 7.) " ' "[I]t is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery." ' " (*Fowler v. Varian Associates, Inc.* (1987) 196 Cal.App.3d 34, 44 [241 Cal.Rptr. 539].)

Chang had never been Lederman's client, and Lederman had no duty to provide legal advice to her simply because she was Schumert's widow. (*Hall v. Superior Court* (2003) 108 Cal.App.4th 706, 713–714 [133 Cal.Rptr.2d 806] [lawyer representing wife in wrongful death action arising from daughter's death owed no duty to husband, who had never met with him, to discuss his legal rights; distinguishing *Meighan v. Shore* (1995) 34 Cal.App.4th 1025 [40 Cal.Rptr.2d 744][9] as limited to situations in which both spouses consult with lawyer regarding their rights and there is no potential conflict of interest between them].) In light of these facts, none of the conduct alleged in the second amended complaint can reasonably be regarded as extreme or outrageous. The letter Lederman sent directing Chang to move from the Sherman Oaks residence, in his capacity as counsel for Hadar, the successor trustee, in connection with the administration of the Raphael Schumert 2004 Revocable Trust, was faithful to the express terms of the trust. Although Chang may have had some right to continued possession of the residence as Schumert's surviving spouse under the homestead provisions of the Probate Code (see fn. 3, *ante*), Lederman had no duty to advise her of those rights.

In addition, as the trial court held in sustaining the demurrer to this cause of action as alleged in the first amended complaint, Lederman's letter to Chang directing her to leave the Sherman Oaks residence is absolutely protected under the litigation privilege codified in Civil Code section 47, subdivision (b), because it was sent to further the objectives of the probate proceedings initiated by Hadar. "The privilege 'applies to any publication required or permitted by law in the course of a judicial proceeding to achieve the objects of the litigation, even though the publication is made outside the courtroom and no function of the court or its officers is involved.' " (*Jacob B. v. County of Shasta* (2007) 40 Cal.4th 948, 955 [56 Cal.Rptr.3d 477, 154 P.3d 1003].) " '[C]ommuncations with "some relation" to judicial proceedings' are 'absolutely immune from tort liability' by the litigation privilege. [Citation.] It is not limited to statements made during a trial or other proceedings, but may extend to steps taken prior thereto, or afterwards." (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1057 [39 Cal.Rptr.3d 516,

[9] In *Meighan v. Shore, supra,* 34 Cal.App.4th at page 1030, Division Four of this court held a lawyer's duty can extend to the client's spouse "where both spouses consult an attorney with respect to a personal injury suffered by one of them and the attorney knows or could readily ascertain that the other spouse has a potential claim for loss of consortium, and where that spouse is unaware of his or her rights."

128 P.3d 713]; see *Steiner v. Eikerling* (1986) 181 Cal.App.3d 639, 642–643 [226 Cal.Rptr. 694] [litigation privilege applies to communicative acts in connection with probate proceedings].) Lederman's letter, the factual foundation for Chang's claim for intentional infliction of emotional distress, fits squarely within this privilege. (See *Silberg v. Anderson* (1990) 50 Cal.3d 205, 212 [266 Cal.Rptr. 638, 786 P.2d 365] [litigation privilege applies to tort liability based on theory of intentional infliction of emotional distress]; see generally *Jacob B.*, at p. 956.)

## DISPOSITION

The judgment is affirmed. Lederman is to recover his costs on appeal.

Woods, J., and Zelon, J., concurred.

Appellant's petition for review by the Supreme Court was denied June 10, 2009, S172402.