Filed 11/25/20  Estate of Stafford CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| Estate of ALISON H. STAFFORD, Deceased. | B301208 |
| | (Los Angeles County Super. Ct. No. 18STPB06599) |
| ESTEBAN D. PEREZ, Petitioner and Appellant, v. RICHARD STAFFORD, Objector and Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County, Deborah L. Christian, Judge.  Reversed with directions.

Jay Oberholtzer, for Petitioner and Appellant.

Hess Verdon & Associates and Keith Van Dyke, for Objector and Respondent.

# INTRODUCTION

After Alison H. Stafford died in November 2017, her friend, Esteban Perez, filed a petition in the probate court to validate her trust, claiming that Alison intended to leave the residue of her trust to him through a limited liability company and to give him a power of appointment to name the beneficiary of the trust. Alison's trust, created three days before her death, named Perez as the trustee to administer and distribute trust property and described the beneficiary as "[LLC to be named]." Perez alleged that, based on the drafting attorney's recommendation, Alison decided to distribute the trust's assets to a limited liability company controlled by Perez, rather than to Perez directly, to avoid challenges she anticipated her brothers would make to her estate plan. Perez alleged, among other things, that Alison gave him a power of appointment to select the LLC and that extrinsic evidence of the circumstances surrounding Alison's creation of the trust helped prove she did.

After providing Perez with one opportunity to amend his petition, the probate court sustained without leave to amend a demurrer by Alison's brother and intestate heir, Richard Stafford.[1] We reverse.

---

[1] Because Alison Stafford and Richard Stafford share a surname, we refer to them by their first names.

2

# FACTUAL AND PROCEDURAL BACKGROUND

A. *Alison Creates the Alison H. Stafford Revocable Living Trust*

On October 29, 2017, three days before she died, Alison executed four estate planning documents, all prepared by the same attorney, including the Alison H. Stafford Revocable Living Trust, which named Perez as the trustee. Paragraph 5.1 of the trust stated: "Upon the Grantor's death, the Trustee shall hold, manage, administer and distribute the remaining principal of the Trust, together with all property distributable to the Trustee as a result of the Grantor's death, whether by Will or otherwise . . . ." Paragraph 5.3 of the trust stated: "Upon the death of the Grantor and completion of the payments described in Paragraph 5.2 hereof,[2] 100% of the membership interest in [LLC to be named] shall go to [LLC to be named] and then the Trustee shall distribute the remaining principal and any undistributed net income of the Trust Fund in full to the sole beneficiary [LLC to be named] . . . ."[3] The trust also stated that, if anyone initiated

---

[2] Paragraph 5.2 described payments for, among other expenses, funeral expenses, costs of administering Alison's estate, costs of packing and storing Alison's assets, and certain estate taxes.

[3] The parties agree the version of the trust executed by Alison is the one that describes the beneficiary as "[LLC to be named]." The record includes two other versions of the trust that name the beneficiary as "Countess Dis Series 1, LLC" and "The Perez Family Irrevocable Spendthrift Trust." According to Perez, the version naming "Countess Dis Series 1, LLC" was created after Alison's death. Perez claims he created that version at the direction of the drafting attorney, who instructed him "to

guardianship proceedings, Alison appointed Perez her legal guardian.  Alison signed a memorandum of trust confirming she had created a trust naming Perez as trustee and a durable power of attorney for health care decisions that designated Perez as her health care agent.

Alison also executed a pour-over will naming Perez as the personal representative and giving him, as trustee of the trust, her personal property, with directions to distribute it pursuant to the terms of the trust.[4]  The will gave Perez "absolute discretion" to "acquire, encumber and dispose of real and personal property" and to "make distributions (including the satisfaction of any pecuniary devise) in cash or in specific property, real or personal . . . ."  Alison devised the residue of her estate to her trust.  The will stated:  "If for any reason a court of competent jurisdiction shall declare this testamentary transfer to the Trustee of said Trust or said Trust itself to be invalid, I devise the residue of my estate to the Trustee named in my Trust instrument, as amended, IN TRUST, for the uses and purposes and subject to

---

substitute pages to reflect that the disposition of the residue of the Trust was to be in favor of 'Countess Dis, LLC.'"  The version of the trust naming "The Perez Family Irrevocable Spendthrift Trust" as the beneficiary appears to have been created by the drafting attorney on or around December 6, 2017.

[4]      A pour-over will causes any portion of a decedent's estate not already included in the trust to become a trust asset and to be distributed to the trust beneficiaries under the trust.  (See, e.g., *Wilkin v. Nelson* (2020) 45 Cal.App.5th 802, 804; *Conservatorship of Davidson* (2003) 113 Cal.App.4th 1035, 1043, disapproved on another ground in *Bernard v. Foley* (2006) 39 Cal.4th 794, 816, fn. 14.)

the terms and conditions set forth in the Trust instrument, as amended, for the period beginning with the date of my death."

  B.  *Alison Dies, and Richard and Perez File Petitions in the Probate Court*

  On December 7, 2017 Richard filed a petition for letters of administration, alleging Alison died intestate.  On January 3, 2018 Perez objected to Richard's petition and filed a petition for probate of Alison's will, asking the court to appoint him the executor of her estate.  On January 18, 2018 Richard filed an objection and contest to the will Perez was seeking to probate, claiming that Perez, whom Richard described as Alison's "gardener and occasional driver," obtained it by undue influence and fraud and that Alison "was not mentally competent" and lacked capacity to make the will.  Richard alleged that the will "was drafted just days before [Alison's] death and solely at the request of" Perez, that "the drafting attorney prepared the [w]ill based solely on his discussions with [Perez] and without ever speaking with" Alison, and that the will did "not reflect the wishes of [Alison] but rather reflects solely the wishes of" Perez.

  On July 16, 2018 Richard filed a petition to invalidate the trust.  Richard argued that the trust failed to name a beneficiary and that the limited liability company that purported to be the beneficiary of the trust was not created until eight days after Alison died.

  On November 19, 2018 Perez filed a petition to confirm the validity of the trust.  Perez alleged that Alison's "intention was manifestly to give her estate to [Perez] and not to her intestate heirs.  The intention of [Alison] was equally manifest that [Perez], as Trustee, was empowered to name an LLC to receive

5

the Trust estate upon her death. . . . Perez is ready, willing and able to offer clear and convincing evidence that the intention of [Alison] was that he be the sole beneficiary of her Trust and that this Trust was intended to fulfill that intention." Richard demurred to Perez's petition, arguing that the trust was invalid because, at the time of Alison's death, there was no beneficiary and that there was no basis to reform the trust. The probate court sustained the demurrer with leave to amend.

### C. *Perez Files an Amended Petition To Confirm the Validity of the Trust*

On March 11, 2019 Perez filed an amended petition to confirm the validity of the trust. He alleged that Alison was unmarried and had no children, that her only intestate heirs were two brothers with whom she had been engaged in prolonged litigation, and that Perez was Alison's "long time, and close, friend." Perez further alleged that, near the end of October 2017, Alison's health deteriorated rapidly; that, because Alison's death was imminent, the drafting attorney emailed the estate planning documents to Alison on October 24, 2017; and that she executed them five days later.

As discussed, the executed version of the trust provided that the beneficiary was "[LLC to be named]." Perez alleged that Alison's "overall intention . . . was always that the residue of her Trust" would pass to Perez and that the "disposition to a Nevada Limited Liability Company was selected by [Alison] as the attorney had advised that to be the best method to insulate . . . Perez from problems expected from her two brothers." Perez further alleged that, "[a]fter discussing the matter with the attorney who was preparing the estate planning

6

documents, [Alison] approved the proposal that the residue of the Trust be distributed to a Limited Liability Company controlled entirely by . . . Perez, rather than a distribution, outright, to . . . Perez." Perez also claimed that "a general power of appointment was granted" to Perez, as trustee, when Alison "directed that an LLC 'be named'" and that, approximately three weeks after Alison's death, Perez received documents from the drafting attorney "reflecting that a Limited Liability Company named 'Countess Dis' had been formed in Nevada on November 8, 2017."[5]

D.    *The Probate Court Sustains Richard's Demurrer to Perez's Amended Petition Without Leave To Amend*

Richard demurred to the amended petition, again arguing that the trust was invalid because it did not name a beneficiary and that there was no beneficiary at the time of Alison's death. Richard also argued that the Supreme Court in *Estate of Duke* (2015) 61 Cal.4th 871 "sanctioned reformation only where there is a manifest mistake in the drafting of Settlor's actual specific intent" and that, "[b]ecause no such mistake is manifest or can be alleged in our case, [Perez] cannot state a claim for reformation under [*Estate of*] *Duke*." Richard also argued Perez's allegations were not sufficient to reform the trust to name a beneficiary or to create a power of appointment in Perez to name one.

---

[5]    According to Perez, he and Alison chose the name "Countess Dis" because the two of them "jokingly referred to [Alison] as the 'Queen of Discounts' because she was always trying to obtain the lowest price possible for anything she purchased."

7

The probate court sustained Richard's demurrer to Perez's amended petition without leave to amend and dismissed the petition. The probate court also granted Richard's petition to invalidate the trust. Perez timely appealed.

## DISCUSSION

A. *Standard of Review*

Probate Code section 17200, subdivision (a),[6] authorizes a trustee or beneficiary of a trust to petition the probate court "concerning the internal affairs of the trust," which include determining "questions of construction of a trust instrument," "[d]etermining the validity of a trust provision," and "[a]scertaining beneficiaries and determining to whom property shall pass or be delivered . . . to the extent the determination is not made by the trust instrument." (§ 17200, subd. (b).) A petition under section 17200 is subject to demurrer. (See § 1000 [except to the extent the Probate Code provides applicable rules, the rules of practice applicable to civil actions apply to probate proceedings].) On appeal from a dismissal after an order sustaining a demurrer without leave to amend, we review "'the complaint de novo to determine whether it alleges facts sufficient to state a cause of action. For purposes of review, we accept as true all material facts alleged in the complaint, but not contentions, deductions or conclusions of fact or law.'" (*Dudek v. Dudek* (2019) 34 Cal.App.5th 154, 163-164.) We also consider any exhibits attached to the complaint. (*Paul v. Patton* (2015) 235 Cal.App.4th 1088, 1091.)

---

[6]     Statutory references are to the Probate Code.

B. *Perez's Petition Stated Facts Constituting a Cause of Action To Confirm the Validity of the Trust*

"The essential necessary elements of a valid trust are (1) a trust intent [citation]; (2) trust property [citation]; (3) trust purpose [citation]; and (4) a beneficiary." (*Dudek v. Dudek, supra*, 34 Cal.App.5th at p. 164.) Section 15205, subdivision (a), states that a trust "is created only if there is a beneficiary." A trustor can satisfy this requirement by either naming a beneficiary or by granting someone the power to select a beneficiary. Under section 15205, subdivision (b), the requirement of a beneficiary "is satisfied if the trust instrument provides for either of the following: [¶] (1) A beneficiary or class of beneficiaries that is ascertainable with reasonable certainty or that is sufficiently described so it can be determined that some person meets the description or is within the class. [¶] (2) A grant of a power to the trustee or some other person to select the beneficiaries based on a standard or in the discretion of the trustee or other person." The failure to name a beneficiary invalidates a trust. (§ 15205, subd. (a); see, e.g., *Estate of Gaines* (1940) 15 Cal.2d 255, 266 ["The most that can possibly be inferred from the evidence is that the decedent may have intended to create a trust, for some purpose, or for someone's benefit, but failed to disclose that purpose, or the beneficiary, and therefore failed to create the trust."].)

At oral argument counsel for Perez clarified that Perez's sole contention is that the trust contained an ambiguity about who was to select the "[LLC to be named]" and that the probate court should have given Perez the opportunity to present extrinsic evidence Alison intended to give him a power of appointment to name the beneficiary. Contrary to the argument

9

in his briefs, counsel for Perez conceded at oral argument Alison could not have intended for "[LLC to be named]" to mean Countess Dis, LLC because that entity did not exist at the time of Alison's death. In other words, Perez now relies on section 15205, subdivision (b)(2), and not section 15205, subdivision (b)(1), to prove Alison created a valid trust. Counsel for Richard argued that the trust is not ambiguous and that Alison intended to select the LLC to be named, but failed to do so before she died. Counsel for Richard further argued that the trust did not give Perez a power of appointment to name the beneficiary and that the court could not reform the trust to insert a power of appointment because doing so would violate the statutory requirements for creating a power of appointment.

### 1.    *Interpretation of Trusts*

"'[T]he primary rule in construction of trusts is that the court must, if possible, ascertain and effectuate the intention of the trustor or settlor.' [Citation.] 'The intention of the transferor as expressed in the [trust] instrument controls the legal effect of the dispositions made in the instrument.'" (*Crook v. Contreras* (2002) 95 Cal.App.4th 1194, 1206.) The following rules of construction "apply where the intention of the transferor is not indicated by the instrument." (§ 21102; see § 21101 ["this part applies to a . . . trust"].) "The words of an instrument are to receive an interpretation that will give every expression some effect, rather than one that will render any of the expressions inoperative. Preference is to be given to an interpretation of an instrument that will prevent intestacy or failure of a transfer, rather than one that will result in an intestacy or failure of a transfer." (§ 21120; see *Estate of Goyette* (2004) 123 Cal.App.4th

10

67, 74 [courts favor an interpretation of a provision in a will that avoids intestacy].) "All parts of an instrument are to be construed in relation to each other and so as, if possible, to form a consistent whole. If the meaning of any part of an instrument is ambiguous or doubtful, it may be explained by any reference to or recital of that part in another part of the instrument." (§ 21121.)

Where the language of a trust is ambiguous, meaning it is reasonably susceptible to more than one interpretation, extrinsic evidence is admissible to determine the meaning of that language and to determine whether the document constitutes a trust. (§§ 6111.5, 21102; see *Estate of Dodge* (1971) 6 Cal.3d 311, 318 ["we may utilize extrinsic evidence to aid in construing the will if we find that the will is 'ambiguous' or, more precisely, that in the light of both the language of the will and the circumstances under which it was made, the will is reasonably susceptible of more than one interpretation"]; *Estate of Russell* (1968) 69 Cal.2d 200, 206 ["[w]hen the language of a will is ambiguous or uncertain resort may be had to extrinsic evidence in order to ascertain the intention of the testator," and "extrinsic evidence is admissible 'to explain any ambiguity arising on the face of a will, or to resolve a latent ambiguity which does not so appear'"]; *Estate of Dye* (2001) 92 Cal.App.4th 966, 976 ["portions of a will can be deemed ambiguous, permitting resort to extrinsic evidence of a testator's knowledge and purpose"]; *Ike v. Doolittle* (1998) 61 Cal.App.4th 51, 57 [court properly admitted and considered extrinsic evidence to resolve the ambiguities in a trust].) Extrinsic evidence, however, is not admissible to give a trust "a meaning to which it is not reasonably susceptible." (*Ike*, at p. 73; see *Trolan v. Trolan* (2019) 31 Cal.App.5th 939, 949 ["The court can . . . consider extrinsic evidence regarding the circumstances under which the

11

trust was made, in order to interpret the trust instrument, but not to give it a meaning to which it is not reasonably susceptible."].)  The issue here is whether Alison's trust is reasonably susceptible to Perez's interpretation that Alison created and gave him a power of appointment to select the beneficiary.

### 2.  *Powers of Appointment*

""""A power of appointment is a power conferred by the owner of property (the "donor") upon another person (the "donee") to designate the persons ("appointees") who will receive the property [("appointive property")] at some time in the future.'" [Citations.]  Such a power can be general—exercisable in favor of anyone, *including the holder of the power* or that person's estate—or limited—exercisable only in favor of the person or class specified in the instrument creating the power.  [Citation.] A trust can be the "creating instrument" that "creates or reserves the power of appointment."""  (*Tubbs v. Berkowitz* (2020) 47 Cal.App.5th 548, 554; see § 611, subd. (a); *Estate of O'Connor* (2018) 26 Cal.App.5th 871, 879.)  A power of appointment enables a donee or "powerholder" to "designate a recipient of an ownership interest in or another power of appointment over the appointive property."  (§ 610, subd. (f); see *Estate of Kuttler* (1958) 160 Cal.App.2d 332, 337.)  "'Powerholder' means the person to whom a power of appointment is given or in whose favor a power of appointment is reserved."  (§ 610, subd. (g).)

Section 621 lists the requirements for creating a power of appointment:  "(1) There is a creating instrument.  [¶]  (2) The creating instrument is valid under applicable law.  [¶]  (3) . . . [T]he creating instrument transfers the appointive property.

12

[and ¶] (4) The terms of the creating instrument manifest the donor's intent to create in a powerholder a power of appointment over the appointive property exercisable in favor of a permissible appointee." "[N]o particular form of words is necessary to create a power of appointment." (*Estate of Rosecrans* (1971) 4 Cal.3d 34, 38; see, e.g., *id.* at pp. 38-39 [trust created general powers of appointment in two trustees with language that "the trustees . . . 'shall pay from principal . . . whatever sums they may determine'" equally to themselves and that "'[o]n the termination of this trust all the property thereof . . . shall be divided into two equal parts'" to be distributed to the heirs of each trustee].)

3. *The Trust Is Reasonably Susceptible to Perez's Interpretation That Alison Created a Power of Appointment*

Alison's trust directs Perez, as trustee, to distribute the assets of the trust. The trust provides that, after payment of certain expenses, "the Trustee shall distribute the remaining principal and any undistributed net income of the Trust Fund in full to the sole beneficiary [LLC to be named] . . . ." This language is ambiguous regarding who, Alison or Perez, was to name the LLC. (See *Ike v. Doolittle*, *supra*, 61 Cal.App.4th at pp. 56-57, 73 [court reviews the trust document de novo to determine whether its terms are "ambiguous in some respect"]; *Estate of Russell*, *supra*, 69 Cal.2d at p. 211 ["an ambiguity is said to exist when, in the light of the circumstances surrounding the execution of an instrument, 'the written language is fairly susceptible of two or more constructions'"].) As discussed, Richard interprets this language to mean Alison intended to

13

name the LLC but failed to do so. Perez interprets this language to mean Alison intended for him to name the LLC. (See Rest.3d Property, Wills & Other Donative Transfers § 18.1, reporter's notes ["The legal effect of language that allows a donee to dispose of property may in itself manifest the intent of the donor to create a power of appointment."].)

Given the allegations of extrinsic evidence, Perez's interpretation is reasonable (as is Richard's). Perez alleged Alison intended to leave him the assets in the trust through a Nevada limited liability company that she was creating for that purpose and that Perez would control. Perez alleged that Alison's decision, at the recommendation of the drafting attorney, was to leave her assets to Perez by way of a limited liability company to avoid disputes Alison anticipated would arise involving her brothers, with whom Perez claimed Alison had been engaged in protracted litigation.[7] Perez also alleged that "[t]he effect of stating that an 'LLC' was 'to be named' directed that an LLC be formed and named" and that "[t]his direction was clearly directed to the appointed Trustee [(Perez)]," so that "[t]here would be no need for the Settlor [(Alison)] to direct herself to form an LLC." Perez alleged that Alison's "intention was manifestly to give her estate to [Perez] and not to her intestate heirs."

---

[7] The record includes a petition from trust litigation among the Stafford siblings in Orange County Superior Court, in which Alison sought an accounting from, and surcharge against, her brother Scott Stafford. Richard asked the probate court in this action to take judicial notice of the document to show that, contrary to Perez's claim, the probate litigation was between Alison and Scott, not him.

14

Perez also alleged and attached to his petition other estate planning documents Alison executed, including a durable power of attorney for her health care decisions and a pour-over will, which as discussed gave Perez discretion to acquire, encumber, dispose, and distribute Alison's real property, personal property, and cash.  This evidence further supported Perez's interpretation.  (See *Ammerman v. Callender* (2016) 245 Cal.App.4th 1058, 1088 [""'[o]nce the testamentary scheme or general intention [of a trust] is discovered, the meaning of particular words and phrases is to be subordinated to this scheme, plan or dominant purpose"'''].)  Given these allegations of the extrinsic evidence, the trust is reasonably susceptible to Perez's proposed interpretation that Alison intended to give Perez the power to name the LLC that would be the beneficiary.  Perez's petition stated facts sufficient to constitute a cause of action to determine the validity of the trust, at least at the pleading stage, where we accept Perez's allegations as true.  (See *Osornio v. Weingarten* (2004) 124 Cal.App.4th 304, 313; *Olson v. Toy* (1996) 46 Cal.App.4th 818, 823.)

Of course, Perez may not be able to prove his allegations of the extrinsic evidence.  Or Richard may prove that Perez obtained the trust and other documents by fraud or undue influence or that Alison lacked capacity when she executed those documents shortly before her death.  But even under Richard's theory that Alison's trust fails because it does not name a beneficiary or create a power of appointment, Perez is entitled to present extrinsic evidence showing Alison intended to give Perez a power of appointment to name the LLC as the beneficiary so that Perez would inherit her assets.  (See *Estate of Duke*, *supra*, 61 Cal.4th at p. 886 ["[e]xtrinsic evidence is admissible not only

15

to aid in the construction of a will, but also to determine whether a document was intended to be a will"]; *Estate of Russell, supra*, 69 Cal.2d at p. 207 ["[e]xtrinsic evidence always may be introduced initially in order to show that under the circumstances of a particular case the seemingly clear language of a will describing either the subject of or the object of the gift actually embodies a latent ambiguity for it is only by the introduction of extrinsic evidence that the existence of such an ambiguity can be shown," and "[o]nce shown, such ambiguity may be resolved by extrinsic evidence"]; see also § 21102, subd. (c) ["Nothing in this section limits the use of extrinsic evidence, to the extent otherwise authorized by law, to determine the intention of the transferor."].)

The sole authority on which Richard relies, *Estate of Eimers* (2020) 49 Cal.App.5th 97 (*Eimers*), is distinguishable. *Eimers* involved sections 630, 631, and 632, which govern the exercise of a power of appointment by trust beneficiaries who have been empowered to designate to whom they want to give their shares of the trust.[8] In exercising this power, the trustor

_____

[8]     Section 630, subdivision (a), provides that, if the instrument "specifies requirements as to the manner, time, and conditions of the exercise of a power of appointment, the power can be exercised only by complying with those requirements." Section 632 explains the significance of a specific condition included in some types of powers of appointment: "If the creating instrument expressly directs that a power of appointment be exercised by an instrument that makes a specific reference to the power or to the instrument that created the power, the power can be exercised only by an instrument containing the required reference." Section 631 addresses the circumstances in which a court may excuse compliance with the terms of a power of appointment. Relevant to the court's decision in *Eimers,* section

may require the trust beneficiaries to specifically exercise and refer to the power of appointment in any will they create to designate who should get their trust shares. (*Id.* at p. 100.) The trust in *Eimers* contained such a provision and required a specific reference to the power of appointment. (*Id.* at p. 101.) The trust beneficiary created a will that purported to give away his trust shares, but that did not specifically refer to the power of appointment, as required by the trust. (*Ibid.*) The court in *Eimers* held that the probate court could not amend or reform the beneficiary's will to include a "specific reference" phrase to preserve the validity of the gift. (*Ibid.*) The court concluded that such a reformation would nullify the requirements of sections 630, 631, and 632. (*Ibid.*)

This case does not involve the failure of a trust beneficiary to properly exercise his or her power of appointment, in violation of sections 630, 631, and 632. This case involves sections 15205 and 621, and the issue is whether Alison, the trustor, created a valid trust by naming a beneficiary, either by identifying the beneficiary (which Perez no longer contends she did) or by granting someone the power to name the beneficiary (which is what Perez contends the language of the trust and the alleged extrinsic evidence shows). And there are significant differences between the language of sections 631 and 632, at issue in *Eimers*, and language of section 621, at issue here. Sections 631 and 632 require the creating instrument to "expressly direct[ ]" that the powerholder exercise the power of appointment by an instrument that makes a "specific reference" to the power or the creating

---

631, subdivision (b), states that "[t]his section does not permit a court to excuse compliance with a specific reference requirement under Section 632."

17

instrument.  (§ 632.)  In contrast, section 621 requires only that the creating instrument "manifest the donor's intent" to create a power of appointment.  (§ 621, subd. (a)(4).)  Where, as here, the trust is ambiguous, extrinsic evidence is an important interpretive tool in determining whether the trust manifests that intent.

Moreover, unlike the beneficiary in *Eimers,* Perez is not seeking to reform the trust to add statutorily required language to confer a power of appointment; Perez is claiming the language of the trust and the extrinsic evidence of Alison's intent support his interpretation that the trust granted him that power.  Perez is not attempting to circumvent the requirements of sections 15205 or 621; he is attempting to meet them by showing, under his (reasonable) interpretation, the trust creates a power of appointment, and therefore is valid under section 15205, subdivision (b)(2).

## DISPOSITION

The order dismissing Perez's petition is reversed.  The probate court is directed to vacate its order sustaining Richard's demurrer without leave to amend and to enter a new order overruling the demurrer.  Perez is entitled to recover his costs on appeal.


SEGAL, J.


We concur:



PERLUSS, P. J.



FEUER, J.

19