Filed 4/9/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| STEPHEN PAUL et al., | H040646 |
| Plaintiffs and Appellants, | (Santa Cruz County Super. Ct. No. CIS CV176597) |
| v. | |
| RICHARD PATTON, | |
| Defendant and Respondent. | |

The decedent, Gilbert Paul, retained attorney Richard Patton to draft an amendment to his revocable living trust. The decedent signed the "Trust Amendment," which, as drafted by Patton, named the decedent's wife, Helen, and his children, Stephen Paul, David Paul, Alan Paul, and Nancy Dybdahl as beneficiaries. Stephen and David Paul also are the successor trustees of the trust. Following the decedent's death, they petitioned the probate court to modify the Trust Amendment, alleging it failed to conform to the decedent's intentions by erroneously granting Helen an interest in decedent's brokerage accounts and personal and real property. In connection with that probate court action, Patton admitted the Trust Amendment did not reflect the decedent's intention that his brokerage accounts and personal and real property be divided among his children. Stephen and David settled the probate court action with Helen.

Subsequently, Stephen, David, Alan, and Nancy (the Pauls) filed the legal malpractice action that is the subject of this appeal against Patton. They alleged that Patton failed to exercise reasonable care in performing legal services for the decedent by failing to draft the Trust Amendment in a manner consistent with the decedent's

intentions. The trial court sustained without leave to amend Patton's demurrer to the Pauls' first amended complaint. We shall reverse.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Because this matter comes to us following a judgment sustaining a demurrer without leave to amend, we assume the truth of the material facts properly pleaded in the Pauls' operative first amended complaint. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 (*Blank*).) Facts appearing in exhibits attached to the first amended complaint also are accepted as true and are given precedence, to the extent they contradict the allegations. (*Dodd v. Citizens Bank of Costa Mesa* (1990) 222 Cal.App.3d 1624, 1627.) The exhibits to the first amended complaint were: (1) the Trust Amendment; (2) a December 13, 2011 letter from Patton regarding the decedent's intent in connection with the Trust Amendment; and (3) a partial transcript of a 2012 deposition of Patton in which he discussed the decedent's intent in connection with the Trust Amendment.[1] In addition to the first amended complaint and its exhibits, we also may consider matters subject to judicial notice. (*Hill v. Roll Internat. Corp.* (2011) 195 Cal.App.4th 1295, 1300.) The Pauls request that we take judicial notice of the amended petition to modify the Trust Amendment filed in the probate court action and its exhibits, which include the decedent's original revocable living trust. We grant that request pursuant to Evidence Code sections 452 and 459. Accordingly, the following factual recitation is based on the facts properly pleaded in the first amended complaint, facts appearing in exhibits attached to the first amended complaint, and facts appearing in the amended petition to modify the Trust Amendment and its exhibits.

---

[1] The Pauls request that we take judicial notice of their first amended complaint and the documents attached to it as exhibits. Judicial notice is unnecessary because, in our review of the demurrer ruling, we accept the allegations in the complaint and the facts in the exhibits as true. (*Blank*, *supra*, 39 Cal.3d at p. 318; *Dodd v. Citizens Bank of Costa Mesa*, *supra*, 222 Cal.App.3d at p. 1627.) Therefore, we deny their request as to the first amended complaint and its exhibits.

2

### A. *The 1995 Trust*

The Pauls are the decedent's four children with his first wife, who died in 1970. The decedent married Helen in 1988. At that time, he had substantial separate property, including real property referred to as "the Quick Stop Property," other real property, brokerage accounts, and personal property.

In 1995, the decedent established a revocable living trust (the "1995 Trust") under which he was both trustor and trustee. The 1995 Trust provided that if Helen survived the decedent, she would have the right to live in (or lease) the marital home for the rest of her life and to receive the net income from the Quick Stop Property. The rest of decedent's property was to be divided among his children, the Pauls. Upon Helen's death, the Pauls were to receive the decedent's one half community property interest in the marital home.

### B. *The Trust Amendment*

The decedent's health and his relationship with Helen began to decline in 2009. In 2011, he retained Patton to amend the 1995 Trust.

As drafted by Patton and executed by the decedent, "the Trust Amendment" defines "beneficiaries" as "Trustor's adult children: Stephen Paul, Alan Paul, David Paul and Nancy Dybdahl (in equal shares, share and share alike) and Trustor's spouse Helen C. Paul."

In a section entitled "Marital Home," the Trust Amendment states "[i]t is Trustor's wish that the marital home be sold after his death." It provides that, upon the sale of the home, half the net proceeds from the sale shall go to Helen and the other half shall be distributed to "Trustor's beneficiaries."

With respect to the income from the Quick Stop Property, the Trust Amendment directs the successor trustees "to use up to $4,000 per month" of that income "to pay for the mortgage, insurance, taxes and maintenance of the marital home." If the marital

home has been sold, the successor trustees are to pay "$4,000 per month from the Quick Stop Property to Helen" as monthly income.

In a section entitled "Other Assets--Personal Property," the Trust Amendment provides: "All other assets held in the Trust at the time of the Trustor's death, shall be distributed as soon as practicable to my beneficiaries, in equal shares, share and share alike. Personal property held in the Trust shall be equally divided between my children as they agree."

Thus, as drafted and executed, the Trust Amendment (1) entitled Helen to one-half plus one-fifth of the proceeds of the sale of the martial home, (2) limited the income Helen could receive from the Quick Stop Property to $4,000 per month, and (3) gave Helen a one-fifth share of the decedent's other assets (aside from his personal property). Under the 1995 Trust, she was entitled to live in or lease (but not to sell) the marital home and to all of the Quick Stop Property income, but to none of the decedent's other assets.

### C.    The Petition to Modify the Trust Amendment and Resulting Settlement

The decedent died in July 2011. In their capacities as successor trustees of the 1995 Trust, Stephen and David filed a petition to modify the Trust Amendment, arguing it did not conform to decedent's intentions. (In re the Matter of Gilbert L. Paul Revocable Living Trust dated April 6, 1995, as amended, Superior Court, Santa Cruz County, case No. PR 045678.) Helen opposed the petition.

In connection with the petition to modify, Patton stated in a December 13, 2011 letter, "I am certain that [decedent] did not intend to give Helen Paul a one-fifth interest in his assets." Patton further wrote, "[i]t was never [decedent's] intention to change the distribution pattern of his real property and/or his brokerage account but rather to clarify the language of the original Trust and to limit the amount of income Helen Paul was to receive from the Quick Stop property. . . . [¶] . . . I am prepared to make a sworn

4

statement that [decedent's] intention was not to grant a one-fifth interest to Helen in his portion of the marital home or his separate property including the Quick Stop real property and the brokerage accounts. Any language to the contrary in the Amendment is a 'scrivener's error' and does not reflect the intention of my client, Gilbert Paul."

Patton was deposed on June 5, 2012, also in connection with the action seeking to modify the Trust Amendment. He stated that, upon reviewing the "Other Assets-- Personal Property" provision of the Trust Amendment after decedent's death, he realized "confusion is caused by the word 'beneficiaries,' as opposed to 'children.' And my reaction to that was that that was not what Gilbert intended." According to Patton, the decedent "did not want [Helen] to share in the personal property, the Morgan Stanley account and the Quick Stop property." As such, Patton characterized the "Other Assets-- Personal Property" provision of the Trust Amendment as containing a "clerical error."

Stephen and David reached a settlement agreement with Helen under which she received more than decedent intended.

### D.     *The Pauls' Professional Negligence Action Against Patton*

The Pauls sued Patton for professional negligence on March 29, 2013. The operative first amended complaint, filed on August 29, 2013, alleged Patton "failed to use reasonable skill and care in drafting the Trust Amendment in that Patton negligently and carelessly: [¶] a. included the term 'beneficiaries' . . . in the section titled 'Other Assets-- Personal Property' instead of 'children,' which directly contradicted [decedent's] clear intent and instruction; [¶] b. referred to 'beneficiaries' instead of 'children' in the Trust Amendment section entitled 'Marital Home,' which also directly contradicted [decedent's] clear intent and instruction." The first amended complaint also alleged that "[a]s a direct result of Defendant Patton's negligence, . . . Plaintiffs have been damaged," in that they "were forced to litigate to have the Trust Amendment modified[,] . . . [they] lost equity value of real property trust assets, and . . . [they] incurred substantial litigation

5

expenses and attorney fees in connection with the Petition for modification of the Trust Amendment," suffering damages "in excess of $115,000."

### E. *Patton's Successful Demurrer*

Patton demurred to the first amended complaint, arguing he owed no duty of care to the Pauls because they were not his clients. In an order filed on December 16, 2013, the trial court sustained the demurrer without leave to amend, stating "no liability exists as a matter of law under the analysis and precedent set forth in, *inter alia*, *Chang v. Lederman* (2009) 172 Cal.App.4th 67." A judgment of dismissal was entered on December 27, 2013. Patton served a notice of entry of judgment on January 6, 2014 and the Pauls timely appealed on February 10, 2014.

## II. DISCUSSION

The single issue raised on appeal is whether the trial court erred in sustaining Patton's demurrer without leave to amend. Because the court's order apparently was based on the conclusion that Patton did not, as a matter of law, owe a duty to the Pauls, "[t]he issue on appeal contains two subquestions: (a) whether the court properly sustained the demurrer because the complaint, as drafted, failed to state a cause of action for professional negligence; and (b) whether the court abused its discretion by refusing [the Pauls] leave to amend--i.e., that the court correctly concluded that there was no reasonable possibility that [the Pauls] could amend the complaint to state a viable cause of action." (*Osornio v. Weingarten* (2004) 124 Cal.App.4th 304, 316 (*Osornio*).)

### A. *Standard of Review*

A demurrer tests the sufficiency of the complaint as a matter of law. (*Osornio*, *supra*, 124 Cal.App.4th at p. 316.) Accordingly, it raises a question of law, to which we apply a de novo standard of review on appeal. (*Ibid*.)

" 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider

6

matters which may be judicially noticed.' [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there is no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff." (*Blank*, *supra*, 39 Cal.3d at p. 318.)

### B. *Elements of a Professional Negligence Claim*

The elements of a claim for professional negligence are: " '(1) the duty of the professional to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence.' " (*Osornio*, *supra*, 124 Cal.App.4th at p. 319.) While negligence is ordinarily a question of fact, the existence of a duty is generally a question of law that may be addressed by demurrer. (*Id*. at p. 316.)

### C. *Attorney Liability to Nonclients*

Generally, " 'an attorney owes a duty of care, and is thus answerable in malpractice, only to the client with whom the attorney stands in privity of contract.' " (*Osornio*, *supra*, 124 Cal.App.4th at p. 320.) However, courts have extended an attorney's duty of care to nonclients--including will and trust beneficiaries--in limited circumstances. (*Lucas v. Hamm* (1961) 56 Cal.2d 583 (*Lucas*) [permitting malpractice suit by will beneficiaries against attorney whose negligent preparation of a will caused them to lose their testamentary rights]; *Bucquet v. Livingston* (1976) 57 Cal.App.3d 914 (*Bucquet*) [permitting malpractice suit by trust beneficiaries who lost portion of testamentary rights because of attorney's negligence].) In *Heyer v. Flaig* (1969) 70

7

Cal.2d 223, 228, disapproved on other grounds in *Laird v. Blacker* (1992) 2 Cal.4th 606, 617, the Supreme Court explained the rationale for extending tort liability to an intended beneficiary as follows: "When an attorney undertakes to fulfill the testamentary instructions of his client, he realistically and in fact assumes a relationship not only with the client but also with the client's intended beneficiaries. The attorney's actions and omissions will affect the success of the client's testamentary scheme; and thus the possibility of thwarting the testator's wishes immediately becomes foreseeable. Equally foreseeable is the possibility of injury to an intended beneficiary. In some ways, the beneficiary's interests loom greater than those of the client. After the latter's death, a failure in his testamentary scheme works no practical effect except to deprive his intended beneficiaries of the intended bequests . . . only the beneficiaries suffer the real loss." (*Heyer v. Flaig*, *supra*, at p. 228.)

Attorney "[l]iability to testamentary beneficiaries not in privity is not, however, automatic." (*Bucquet*, *supra*, 57 Cal.App.3d at p. 921.) Whether an attorney owes a duty to a nonclient beneficiary "is a matter of policy and involves the balancing of various factors." (*Lucas*, *supra*, 56 Cal.2d at p. 588.) Those factors--the so-called *Biakanja*/*Lucas*[2] factors--are: " '[1] the extent to which the transaction was intended to affect the plaintiff [beneficiary], [2] the foreseeability of harm to him, [3] the degree of certainty that the plaintiff suffered injury, [4] the closeness of the connection between the defendant's [attorney's] conduct and the injury[,] . . . [5] the policy of preventing future harm[,]' . . . and [6] 'whether the recognition of liability . . . would impose an undue burden on the profession.' " (*Osornio*, *supra*, 124 Cal.App.4th at p. 330.)

An attorney also may be held liable for professional negligence to a successor trustee, despite the fact that the attorney was hired by the original trustee. (*Borissoff v. Taylor & Faust* (2004) 33 Cal.4th 523, 530-531 (*Borissoff*).) Such liability is not "a

---

[2] *Biakanja v. Irving* (1958) 49 Cal.2d 647.

8

matter of policy," but instead is rooted in the Probate Code, which "gives successor fiduciaries, but not beneficiaries, the same rights as predecessor fiduciaries, including the power to sue for malpractice causing loss to the estate."  (*Id*. at p. 531.)

The Pauls argue their suit against Patton should have been permitted to go forward on either of two alternate theories--(1) Patton owed them a duty of care as trust beneficiaries or (2) they had standing as successor trustees.  We address each theory in turn.

### D. *The Pauls Should Be Granted Leave to Allege Patton Owed Them a Duty as Beneficiaries*

The first amended complaint does not allege Patton owed the Pauls a duty. Therefore, the trial court properly sustained Patton's demurrer.  The more difficult question is whether there was a reasonable possibility that the Pauls could have amended their complaint to allege the duty element of their legal malpractice claim, such that the court should have granted leave to amend.  At this early stage in the litigation, we cannot say as a matter of law that Patton did not owe the Pauls a duty to ensure the Trust Amendment reflected the decedent's testamentary intent.  Accordingly, we conclude the Pauls should have been accorded the opportunity to amend their complaint.

Here, there is no executed trust instrument reflecting the decedent's alleged intent. According to Patton, that is fatal to the Pauls' action because attorneys owe a duty of care only to beneficiaries of executed wills or trust instruments that expressly reflect the testator's intent.  The Pauls contend that whether the testamentary document properly reflects the testator's intent is irrelevant; as long as the testator's intent to benefit the plaintiff is clear, a duty exists.

It certainly is the case that the testator's intent is central to the duty analysis. Where a doubt exists as to whether the plaintiff was the decedent's intended beneficiary, no duty exists.  (*Boranian v. Clark* (2004) 123 Cal.App.4th 1012, 1018 ["liability to a

9

third party will not be imposed where there is a substantial question about whether the third party was in fact the decedent's *intended* beneficiary"]; *Ventura County Humane Society v. Holloway* (1974) 40 Cal.App.3d 897, 906 [lawyer who drafted a will with a bequest to a nonexistent animal rights organization owed no duty to appellant animal rights organization where there was no allegation that the testator intended to leave a bequest to appellant].) Thus, in *Radovich v. Locke-Paddon* (1995) 35 Cal.App.4th 946 (*Radovich*) this court "refused to extend an attorney's duty to a nonclient who was a mere *potential* beneficiary under an *unsigned* draft will." (*Osornio*, *supra*, 124 Cal.App.4th at p. 336.) In reaching that conclusion, this court reasoned that the first four *Biakanja/Lucas* factors did not support a finding of duty because the testamentary document at issue had not been signed and the decedent had "expressed an intention to discuss the draft with her sister" before signing it, casting doubt on whether she intended to execute the document benefiting the plaintiff. (*Radovich*, *supra*, at p. 964.) Given the practical reality "that potential testators may change their minds," a meeting at which the decedent expressed her desire to change her will and the resulting draft will "were insufficient in and of themselves to manifest a commitment by the decedent to benefit [the plaintiff]." (*Ibid.*) The absence of a sufficiently clear "manifestation of commitment" to benefit the plaintiff likewise cast doubt on "the 'foreseeability of harm' to [the plaintiff], the degree of certainty that he 'suffered injury' attributable to [the attorney's] conduct, and the 'closeness of the connection' between [the attorney's] conduct and the injury [the plaintiff] assertedly suffered." (*Ibid.*)

By contrast, courts have found a duty where the executed testamentary document itself reflects the testator's undisputed intent that the plaintiff receive a specific benefit. (*Bucquet*, *supra*, 57 Cal.App.3d at p. 921 ["[a]n attorney may be liable to testamentary beneficiaries only if . . . due to the attorney's professional negligence *the testamentary intent in a legal instrument* is frustrated and the *beneficiaries clearly designated by the*

10

*testator* lose their legacy as a direct result of such negligence" (italics added)]; *Chang v. Lederman*, *supra*, 172 Cal.App.4th at p. 82 (*Chang*) ["California decisions recognize an enforceable duty of care in cases involving a negligently drafted or executed testamentary instrument when the plaintiff was an *expressly named* beneficiary of an *express bequest*"].) For example, in *Osornio* this court found an attorney owed a duty of care to the intended beneficiary of a will he drafted where there was "a clear expression of [the testator's] intention that [the plaintiff] be [the testator's] sole beneficiary under the signed 2001 Will." (*Osornio*, *supra*, 124 Cal.App.4th at p. 336.)

In short, the testator's intent to benefit the plaintiff is a prerequisite to the imposition of a duty on the attorney to the plaintiff. This makes sense, as the rationale for allowing testamentary instrument beneficiaries to recover in the event of a breach by the attorney is that "the main purpose of the testator in making his agreement with the attorney is to benefit" those beneficiaries "and this intent can be effectuated . . . only by giving the beneficiaries a right of action." (*Lucas*, *supra*, 56 Cal.2d at p. 590.)

Read liberally, as it is appropriate in evaluating a demurrer, the amended complaint alleges the decedent intended to grant the Pauls a particular bequest, directed Patton to draft an amendment to his trust effectuating that bequest, and signed the resulting Trust Amendment believing it made the intended bequest. But, as a result of Patton's drafting error, the Trust Amendment does not contain the terms that were intended by the decedent. Accepting those allegations as true, as we must, we view this case as more analogous to *Osornio* than to *Radovich*. Unlike in *Radovich*, here the decedent signed the testamentary document at issue, alleviating any concern that he changed his mind after directing Patton to amend the trust. And, under the facts as alleged, "there is none of the ambiguity concerning the testator's donative intent as was presented in *Radovich*." (*Osornio*, *supra*, 124 Cal.App.4th at p. 336.) Of course,

11

discovery may reveal more ambiguity than does the complaint. We merely conclude that, at this stage, we cannot say as a matter of law that Patton does not owe the Pauls a duty.

The six *Biakanja/Lucas* factors support our conclusion. We find *Chang* instructive as to the first four factors. In *Chang*, the plaintiff alleged the decedent instructed the defendant attorney to revise the decedent's trust (which named the decedent's son and plaintiff as beneficiaries) to leave the entire trust estate to the plaintiff. (*Chang*, *supra*, 172 Cal.App.4th at p. 73.) The attorney refused and advised his client, who was seriously ill, to "have a psychiatric evaluation before making any changes to his estate plan." (*Ibid*.) While, unlike here, there was no allegation the attorney confirmed the decedent intended to revise his trust, *Chang* also was decided at the demurrer stage. Accordingly, the court "accept[ed] as true the factual allegation[]" that the decedent "advised [his attorney] of his desire to leave his entire estate to [the plaintiff]." (*Id*. at p. 83.) In view of that allegation, the court concluded that "at least four of the six *Biakanja/Lucas* factors point[ed] toward extending [the attorney's] duty of care to include" the plaintiff: "the transaction . . . was intended to directly affect [the plaintiff] (the first factor) and it was plainly foreseeable [the attorney's] failure to exercise due care in carrying out [the decedent's] instructions would harm [the plaintiff] (the second factor). [The plaintiff] has also alleged she suffered injury as a result of [the attorney's] negligence (the third factor); and from the allegations in her complaint there appear to be no intervening circumstances that might have broken the causal connection between [the attorney's] conduct and [the plaintiff's] damage (the fourth factor)." (*Ibid*.) To this point, the *Chang* court's analysis applies equally here.

In our view, the fifth *Biakanja/Lucas* factor--the policy of preventing future harm--also weighs in favor of finding Patton owed the Pauls a duty of care with respect to the Trust Amendment. "If testamentary beneficiaries who" lose some or all of an intended bequest because of an attorney's admitted clerical error "are deprived of the right to bring

12

suit against the attorney responsible . . . , no one would be able to bring such action. The policy of preventing harm would thus be impaired." (*Osornio*, *supra*, 124 Cal.App.4th at p. 332.) "The imposition of duty under the circumstances before us would . . . promote public policy . . . [by] encourag[ing] the competent practice of law by counsel representing testators [and] trustors . . . ." (*Id*. at pp. 332-333.)

Finally, the sixth factor--whether extension of liability would impose an undue burden on the profession--also favors the Pauls. Imposing liability on attorneys to properly define and use basic terms such as "beneficiaries" and "children" to carry out the testator's wishes does not impose an undue burden on the legal profession. And, where, as is alleged here, there is no dispute regarding the decedent's intent, the imposition of liability will not compromise the attorney's duty of undivided loyalty to the testator.

We recognize that in *Chang*, which is factually analogous to this case in many ways, the court found no duty based exclusively on the sixth factor. The *Chang* court expressed concern that "any disappointed potential beneficiary--even a total stranger to the testator--could make factual allegations similar in most respects to those in the second amended complaint . . . ." (*Chang*, *supra*, 172 Cal.App.4th at p. 83.) "Without a finite, objective limit on the identity of individuals to whom they owe a duty of care, the burden on lawyers preparing wills and trusts would be intolerable." (*Id.* at p. 84.) We find that analysis inapplicable to the facts of this case. While in *Chang* the plaintiff merely alleged the decedent "instructed [the attorney] to revise his trust" (*id.* at p. 73), something "any disappointed potential beneficiary" could allege (*id.* at p. 83), here the Pauls allege Patton admitted to a drafting error in another action. That is not an allegation most disappointed beneficiaries can make.

13

For the foregoing reasons, we conclude the trial court erred in concluding as a matter of law that the Pauls could not establish Patton owed them a duty as beneficiaries. On remand, the Pauls should be permitted to amend their complaint to allege such a duty.

### *E*.      *The Pauls Failed to State a Claim as Successor Trustees*

The Pauls also maintain that Stephen and David stated a claim against Patton in their capacity as successor trustees. The Pauls did not raise this argument below, but we agree with their contention that they can assert it for the first time on appeal. (*20th Century Ins*. *Co*. *v*. *Quackenbush* (1998) 64 Cal.App.4th 135, 139, fn. 3 ["When a demurrer is sustained without leave to amend the petitioner may advance on appeal a new legal theory why the allegations of the petition state a cause of action."].) However, we find the argument to be without merit.

Under the Probate Code, "successor [trustees], but not beneficiaries, [have] the same rights as predecessor [trustees], including the power *to sue for malpractice causing loss to the estate*." (*Borissoff*, *supra*, 33 Cal.4th at p. 531, italics added; *id*. at p. 535 [successor fiduciaries have "the power *to sue for malpractice harming the trust*" (italics added)].) The first amended complaint does not allege facts suggesting any injury to the estate or the trust. Rather, the thrust of the factual allegations is that the Pauls, individually, received a smaller portion of the trust assets than they should have. For example, the complaint alleges "*Plaintiffs* have lost equity value of real property trust assets." (Italics added.) Because the Pauls neither allege, nor establish that they can allege, harm to the trust, *Borissoff* and its progeny are inapposite. (*Borissoff*, *supra*, at p. 528 [successor fiduciary had standing to sue attorney whose negligence allegedly caused estate to lose ability to claim tax refund]; *Stine v*. *Dell'Osso* (2014) 230 Cal.App.4th 834 [successor conservator had standing to sue attorney who allegedly negligently failed to prevent misappropriation of estate assets]; *Smith v*. *Cimmet* (2011) 199 Cal.App.4th 1381, 1387 [successor personal representative may sue attorneys who allegedly

14

prosecuted a meritless lawsuit that unnecessarily expended estate assets].)

**III.    DISPOSITION**

The judgment is reversed and, on remand, the trial court is directed to grant the Pauls leave to amend.  The Pauls shall recover their costs on appeal.

_____
                                    Premo, J.


WE CONCUR:



_____
        Rushing, P.J.




_____
        Márquez, J.




Paul et al. v. Patton
H040646

| Trial Court: | Santa Cruz County Superior Court<br>Superior Court No. CIS CV176597 |
| --- | --- |
| Trial Judge: | Hon. Rebecca Connolly |
| Counsel for Plaintiffs/Appellants:<br>Stephen Paul, David Paul, Alan Paul,<br>Nancy Dybdahl | Willoughby, Stuart & Bening<br>Bradley A. Bening<br>Ellyn E. Nesbit |
| Counsel for Defendant/Respondent:<br>Richard Patton | Law Offices of Richard L. Francis &<br>Associates<br>Richard L. Francis |

Paul et al. v. Patton
H040646