Filed 12/18/25  Ward v. Kramer CA2/4

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| LARRY WARD, et al., | B344983 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. 22STCV37781) |
| v. | |
| STEPHEN KRAMER, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Deborah L. Christian, Judge.  Affirmed in part, reversed in part, and remanded.

Mitchellweiler Law Corporation, J. Dana Mitchellweiler, Meridith J. Mitchellweiler, Justin Montgomery, and Elissa Schilling for Plaintiffs and Appellants.

Nemecek & Cole, Mark Schaeffer, and Kenny C. Brooks for Defendant and Respondent.

This appeal arises from a dispute over Elyse Ward's inheritance from her late brother, Stephen J. Lengel.[1]  Plaintiffs Larry Ward and Gayle Jolley (Elyse's children, acting as her attorneys in fact)[2] filed an action against other relatives and Stephen Kramer, the attorney who drafted decedent's estate plan.  Kramer demurred to the operative second amended complaint.  The trial court sustained the demurrer without leave to amend and entered judgment for Kramer.

Plaintiffs appeal from the judgment in Kramer's favor.  They argue the trial court erred in sustaining Kramer's demurrer or, in the alternative, erroneously denied leave to amend.  We agree the trial court erred in sustaining the demurrer only as to plaintiffs' cause of action for financial elder abuse.  We reject plaintiffs' other arguments.  We therefore reverse the judgment of dismissal as to the first cause of action for financial elder abuse and affirm the judgment as to the second cause of action for legal malpractice.

## ALLEGATIONS

We briefly summarize the relevant facts alleged in the second amended complaint.  At this stage in the proceedings, we assume ultimate facts are true, but do not assume true contentions or conclusions of law or fact.  (See *Fox v. JAMDAT Mobile, Inc.* (2010) 185 Cal.App.4th 1068, 1078.)

---

[1]  For convenience and clarity, we sometimes use the first names of people who share surnames.

[2]  At times, the second amended complaint indicates one or both plaintiffs also bring claims on their own behalf as individuals.

In 2018, Stephen Lengel retained attorney Kramer to create an estate plan. Stephen's initial trust named his sister Elyse Ward 50% residual beneficiary. In 2019, Lengel revoked the prior trust and executed a new trust instrument providing nothing for Elyse Ward.

Stephen suffered from dementia in 2019. Carol Lengel (the wife of Stephen's late brother, Ronald) and Andrew Lengel (Carol's son) unduly influenced Stephen to disinherit Elyse. Stephen did not truly intend to disinherit Elyse. Kramer knew that but acted against Stephen's wishes to assist in Carol and Andrew's scheme. Alternatively, Andrew deceived Stephen by "swapp[ing] key pages" of the trust instrument to disinherit Elyse.

## PROCEDURAL HISTORY

In 2022, plaintiffs filed their initial complaint against Andrew, Carol, and Kramer. Kramer demurred. Plaintiffs filed a first amended complaint before the trial court heard Kramer's demurrer.

The first amended complaint brought causes of action against Kramer for financial elder abuse and legal malpractice. Kramer again demurred, asserting three grounds: (1) Larry Ward was not a proper party, (2) plaintiffs did not comply with Civil Code section 1714.10's requirement for court approval before filing suit against attorneys in specified circumstances, and (3) plaintiffs did not allege Kramer breached any duty to Elyse Ward. The trial court sustained Kramer's demurrer with leave to amend. In its written order, the trial court found each of Kramer's arguments meritorious.

Plaintiffs then filed a second amended complaint asserting the same two causes of action against Kramer. Kramer

3

demurred to the second amended complaint on the same three grounds as his prior demurrer. The trial court sustained the demurrer without leave to amend and entered judgment of dismissal for Kramer. The record on appeal includes neither a written ruling nor a transcript of the hearing on Kramer's demurrer to the second amended complaint.

## DISCUSSION

Plaintiffs appeal from the judgment of dismissal after the trial court sustained Kramer's demurrer without leave to amend. We "examine the operative complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any legal theory." (*T.H. v. Novartis Pharmaceuticals Corp.* (2017) 4 Cal.5th 145, 162.)

### I. Civil Code Section 1714.10 Does Not Apply

Kramer contends both of plaintiffs' causes of action are barred because they did not comply with Civil Code section 1714.10. This statute limits "a party's right to sue an attorney for conspiring with his or her client." (*Central Concrete Supply Co., Inc. v. Bursak* (2010) 182 Cal.App.4th 1092, 1095.) A plaintiff must obtain "prefiling court-approval" before filing an action subject to the statute. (*Ibid.*) "The purpose of the statute is to 'discourage frivolous claims that an attorney conspired with his or her client to harm another. Therefore, rather than requiring the attorney to defeat the claim by showing it is legally meritless, the plaintiff must make a prima facie showing before being allowed to assert the claim.'" (*MMM Holdings, Inc. v. Reich* (2018) 21 Cal.App.5th 167, 186.)

We begin our analysis with the threshold question of whether Civil Code section 1714.10 applies to plaintiffs' claims.

(*Cortese v. Sherwood* (2018) 26 Cal.App.5th 445, 454 (*Cortese*).) This section applies to a "cause of action against an attorney for a civil conspiracy with his or her client arising from any attempt to contest or compromise a claim or dispute, and which is based upon the attorney's representation of the client." (Civ. Code, § 1714.10, subd. (a).) Courts sometimes divide this analysis into two steps: (1) whether the complaint alleges a cause of action against an attorney for a civil conspiracy with his or her client, and (2) whether that cause of action arises from an attempt to contest or compromise a claim or dispute. (See *Cortese, supra*, 26 Cal.App.5th at pp. 454–458.)

Kramer's demurrer below contended Civil Code section 1714.10 applies because plaintiffs' claims seek to hold him liable for conspiring with his client Andrew Lengel. On appeal, plaintiffs contend their claims arise from Kramer's representation of decedent Stephen, not Andrew. They argue the statute does not apply because Kramer and Andrew merely "happen to have an attorney-client relationship in another context." (*Pierce v. Lyman* (1991) 1 Cal.App.4th 1093, 1110.) We need not and do not address this issue because the second step of the analysis is dispositive.

Even if plaintiffs' claims would otherwise be subject to Civil Code section 1714.10, the statute does not apply because their causes of action do not "aris[e] from any attempt to contest or compromise a claim or dispute." (*Id*., subd. (a).) "The phrase 'arising from any attempt to contest or compromise a claim' suggests the statute's prefiling requirements apply 'to situations in which the alleged conspiracy arose from the attorney's representation of his or her client in a previous or current legal dispute or litigation with the plaintiff.' " (*Cortese, supra,* 26 Cal.App.5th at p. 457.) The representation must relate to a

5

"dispute" with the plaintiff, though it "need not have matured into litigation." (*Ibid.*)

In their briefs, the parties focus on two cases that address whether a cause of action for civil conspiracy against an attorney arose from an attempt to contest or compromise a claim or dispute: *Stueve v. Berger Kahn* (2013) 222 Cal.App.4th 327 (*Stueve*) and *Cortese*.

*Stueve* held Civil Code section 1714.10, subdivision (a) did not apply because the cause of action did not arise from an attempt to contest or compromise a claim or dispute. (*Stueve, supra,* 222 Cal.App.4th at pp. 331–332.) The plaintiffs sued their own attorneys for an alleged "Ponzi scheme . . . to siphon off [plaintiffs'] assets." (*Id.* at p. 329.) The defendant attorneys allegedly diverted plaintiffs' funds to others, including some of their other clients. (*Id.* at p. 331.) The court reasoned that plaintiffs' claims against the attorneys arose not from representing clients in an attempt to contest or compromise a claim or dispute, but "from transactional activities—the siphoning off of assets through fraudulent estate planning, including the misappropriation of the [plaintiffs'] assets through the diversion of those assets to entities created and controlled by the defendants, including [defendant law firm's] other clients." (*Ibid.*)

The plaintiffs in *Stueve* thus did not allege the defendant attorneys harmed them by representing their clients in any claim or dispute with plaintiffs. They alleged the attorneys harmed them by secretly stealing from them. The purported Ponzi scheme only became a dispute later, once the plaintiffs discovered it. (See *Stueve Bros. Farms, LLC v. Berger Kahn* (2013) 222 Cal.App.4th 303, 310–312, 320–321 [companion appeal discussing same pleading's allegations at length].)

6

*Cortese*, on the other hand, held the plaintiff's claim arose from an attempt to contest or compromise a claim or dispute. (*Cortese, supra,* 26 Cal.App.5th at pp. 457–458.)  Like this case, *Cortese* was a dispute over an inheritance.  The defendant attorney represented a man in his capacity as the executor of his wife's estate and trustee of his wife's trust.  (*Id.* at pp. 450–451.)  The man's stepdaughter sued the attorney for breach of trust.  (*Id.* at 452.)  She alleged that "during the administration of her mother's estate, she 'questioned' " her stepfather and his attorney " 'about the low value of the Estate.' "  (*Id.* at p. 451.)  She further alleged the attorney then "persuaded or 'induced' [her] not to challenge" her stepfather's actions regarding her mother's estate "and to agree to early termination of [her mother's] trust, by representing she would receive a large inheritance from [her stepfather's] estate when he died."  (*Id.* at p. 455.)

*Cortese* held the plaintiff's "allegations that [the attorney] induced her not to challenge" her stepfather's conduct as her mother's executor and trustee "qualify as conduct arising from the compromise or settlement of a dispute."  (*Cortese, supra,* at p. 457.)  The court distinguished *Stueve* because the stepdaughter "allege[d] she did question and challenge [the client's] conduct, but was induced not to act on her concerns by representations about her inheritance."  (*Id.* at p. 458.)

The distinction between *Stueve* and *Cortese* hinges on the plaintiff concurrently knowing of and objecting to the alleged conspiracy between the defendant attorney and client.  When an attorney conspires with a client to harm an unaware third party, there is no "claim or dispute" (Civ. Code, § 1714.10, subd. (a)) until the third party learns about and objects to the harmful actions.

In another context, the Court of Appeal consulted "general and legal dictionaries" on the word "dispute" and concluded "a

dispute does not arise solely from the alleged [harmful] conduct." (*Kader v. Southern California Medical Center, Inc.* (2024) 99 Cal.App.5th 214, 222 [interpreting federal statute on arbitration].)  Rather than arising from the harm itself, "[a] dispute arises when one party asserts a right, claim, or demand, and the other side expresses disagreement or takes an adversarial posture."  (*Ibid.*)  Normally, people cannot dispute or assert a claim over something, however harmful it may be, before they know about it.

Plaintiffs allege that is what happened here.  The second amended complaint does not allege facts showing plaintiffs' claims arise from attorney Kramer representing a client in "any attempt to contest or compromise a claim or dispute" (Civ. Code, § 1714.10, subd. (a)) with Elyse, Larry, or Jolley.  Instead, it alleges that during Kramer's representation of any client, plaintiffs did not and could not have any claim or dispute about Elyse's inheritance because they did not know about it.

Plaintiffs' claims against Kramer seek to hold him liable for modifying Stephen's estate plan in 2019 to disinherit Elyse. Plaintiffs allege Kramer "knows [Stephen] never truly intended" to disinherit Elyse but nevertheless drafted a trust excluding her. They further contend doing so constituted financial elder abuse because Kramer participated in using "fraud and undue influence" to make Stephen execute the 2019 trust disinheriting Elyse.  Plaintiffs also allege Kramer's conduct constituted legal malpractice because Kramer "fail[ed] to properly determine [Stephen's] true testamentary intentions . . . or properly and adequately test for capacity and/or properly determine that [Stephen] was of sound mind and not acting through the undue influence of others."

When Kramer performed the legal services for which plaintiffs seek to hold him liable, there was no dispute over

8

Elyse's inheritance.  Plaintiffs concede they initially "had no knowledge that [Stephen] had signed the 2019 Trust" disinheriting Elyse.  They only learned about it after Stephen died in April 2020.  Plaintiffs did not and could not dispute Stephen's 2019 trust or assert any claim about Elyse's inheritance until after the deed was done.

As in *Stueve*, the defendant attorney allegedly represented a client in harming plaintiffs before any claim or dispute arose.  The plaintiffs then discovered the alleged harm and brought a lawsuit over it.  In both cases, the only dispute or claim was the instant action.  Plaintiffs are not suing Kramer for legal services performed in the course of this action.  They are suing him for the transactional legal services performed in 2019, before any dispute or claim existed.  Plaintiffs' claims against Kramer therefore do not "aris[e] from any attempt to contest or compromise a claim or dispute."  (Civ. Code, § 1714.10, subd. (a).)

Kramer's reliance on *Cortese* is misplaced.  There, the plaintiff "question[ed] and challenge[d]" the harmful conduct, "but was induced not to act on her concerns by representations about her inheritance."  (*Cortese, supra,* 26 Cal.App.5th at p. 458.)  Questioning and challenging her stepfather and his attorney constituted a claim or dispute between the plaintiff and her stepfather.  Effectively, the attorney negotiated a compromise of that dispute: plaintiff "agree[d] to early termination of" her mother's trust because the attorney "represent[ed] she would receive a large inheritance from" her stepfather.  (*Id.* at p. 455.)  In other words, she agreed not to pursue a claim over her mother's estate in exchange for a promised inheritance from her stepfather.

Here, plaintiffs allege no such interaction with Kramer.  They did not question or challenge Stephen's 2019 trust—and did not interact with Kramer at all—until after Stephen died.

Assuming Civil Code section 1714.10, subdivision (a) would otherwise apply, Kramer did not represent a client in any "dispute" with plaintiffs or regarding any "claim" by plaintiffs. Plaintiffs seek to hold Kramer liable for transactional services rendered before any dispute or claim existed, not for representing a client in the dispute that resulted from those services. Civil Code section 1714.10, subdivision (a) does not apply.

Kramer also cites *Klotz v. Milbank, Tweed, Hadley & McCloy* (2015) 238 Cal.App.4th 1339 (*Klotz*). There, the court held Civil Code section 1714.10 barred a claim against attorneys that "arose in the course of the provision of services in connection with the settlement of a claim or dispute, namely, [their client's] withdrawal" as a partner or member of plaintiff's business "and request for advice on a new business opportunity that potentially conflicted with [plaintiff's] interests." (*Klotz,* at p. 1352.) Like most cases on the subject (see *Stueve, supra,* 222 Cal.App.4th at p. 332–333), *Klotz* did not consider whether the cause of action against the attorney arose from an attempt to contest or compromise a claim or dispute. *Klotz* discussed Civil Code section 1714.10 in general (*Klotz,* at p. 1350–1351), then analyzed only whether the exemptions in subdivision (c) applied (*id.* at pp. 1351–1352). *Klotz* therefore does not serve as precedent for the issue in this appeal. (See *Stueve,* at p. 332–333.)

Even if *Klotz* had addressed the relevant issue, it is distinguishable. There, the client "consulted" with the defendant attorneys "individually to procure legal advice adverse to" plaintiffs. (*Klotz, supra,* 238 Cal.App.4th at p. 1344.) For their client, the attorneys prepared an agreement that would dissolve the plaintiffs' business and release their client "from all claims and obligations under the [plaintiff entity's] operating agreement." (*Id.* at p. 1345.) The proposed agreement was thus an attempt to negotiate the compromise of a claim or dispute

10

between plaintiffs and the client. By contrast, in this case, Kramer did not draft any proposed agreement between his client and Elyse. He did not represent any client in a dispute with Elyse and did not interact with Elyse until months after performing the relevant legal services.

The trial court incorrectly applied Civil Code section 1714.10. That does not, however, end our review. We proceed to consider the other grounds for Kramer's demurrer.

## II. Larry Ward May Bring This Action

Kramer also contends Larry is not a proper party to either of plaintiffs' causes of action because (a) he does not allege he suffered any damages and (b) to the extent he brings the action in his capacity as Elyse's attorney in fact, his involvement is superfluous.

Larry need not allege he personally suffered damages. He alleges he brings this action both as Elyse's attorney in fact and "pursuant to Welfare and Institutions Code section 15657.3 sub[division] (d)" as decedent's successor in interest. The second amended complaint includes Larry's declaration (made jointly with Jolley) stating he is decedent's successor in interest. (See Code Civ. Proc., §§ 377.11, 377.32.)

Kramer provides no authority nor any persuasive reason why only one plaintiff can act on someone's behalf as attorney in fact or as a decedent's successor in interest. By making conclusory assertions unsupported by citation to legal authority, Kramer forfeits the issue. (See *Sweeney v. California Regional Water Quality Control Bd.* (2021) 61 Cal.App.5th 1093, 1149; *Jones v. Superior Court* (1994) 26 Cal.App.4th 92, 99.)

We also reject Kramer's argument on the merits. The statutory scheme on survival actions contemplates that multiple successors in interest may jointly bring or continue such an

11

action. (Code Civ. Proc., § 377.32, subd. (b) ["Where more than one person executes the affidavit or declaration" to establish they are successors in interest, "the statements required by subdivision (a) shall be modified as appropriate to reflect that fact"]; Welf. & Inst. Code, § 15657.3, subd. (e) [stating procedure when "two or more persons … claim to have standing to commence or maintain an action for elder abuse"].) Regardless of whether Larry's participation in this action is superfluous, Kramer gives no reason why that constitutes grounds for sustaining a demurrer.

## III. The Trial Court Erroneously Sustained the Demurrer to Plaintiffs' Financial Elder Abuse Claim

Kramer demurred to plaintiffs' first cause of action for financial elder abuse solely on the two grounds we reject above. By raising no other basis for demurrer to this cause of action, neither before the trial court nor in his appellate brief, Kramer forfeits any other grounds for demurring to this cause of action. (See *Sweeney v. California Regional Water Quality Control Bd., supra,* 61 Cal.App.5th 1093, 1149; *LaChance v. Valverde* (2012) 207 Cal.App.4th 779, 789.) We therefore reverse the judgment of dismissal as to plaintiffs' cause of action for financial elder abuse.

## IV. The Trial Court Correctly Sustained the Demurrer to Plaintiffs' Legal Malpractice Claim

### A. Kramer Owed No Duty to Plaintiffs

Plaintiffs allege insufficient facts for their second cause of action for legal malpractice.[3] This cause of action requires that

---

[3] The second amended complaint erroneously labels it the third cause of action.

12

the attorney owed a duty to the plaintiff and breached that duty. (*Paul v. Patton* (2015) 235 Cal.App.4th 1088, 1095 (*Paul*).)

Kramer never represented Elyse, Larry, or Jolley. "Generally, ' "an attorney owes a duty of care, and is thus answerable in malpractice, only to the client with whom the attorney stands in privity of contract." ' " (*Paul, supra,* 235 Cal.App.4th at p. 1095.) "However, courts have extended an attorney's duty of care to nonclients—including will and trust beneficiaries—in limited circumstances." (*Id.* at pp. 1095–1096.) "Whether an attorney owes a duty to a nonclient beneficiary 'is a matter of policy and involves the balancing of various factors.' " (*Id.* at p. 1096.)

Courts sometimes enumerate six nonexclusive factors: "[1] the extent to which the transaction was intended to affect the plaintiff, [2] the foreseeability of harm to him, [3] the degree of certainty that the plaintiff suffered injury, [4] the closeness of the connection between the defendant's conduct and the injury, [5] the policy of preventing future harm" (*Lucas v. Hamm* (1961) 56 Cal.2d 583, 588) and "[6] whether the recognition of liability to beneficiaries of wills . . . would impose an undue burden on the profession" (*id.* at p. 589; accord *Paul, supra,* 235 Cal.App.4th at p. 1100). Other opinions list eight factors. (See *Gordon v. Ervin Cohen & Jessup LLP* (2023) 88 Cal.App.5th 543, 555 (*Gordon*).)

*Gordon* divided eight factors "into three groups." (88 Cal.App.5th at p. 555.) The first group includes factors one through five above, focusing on how "clear[ ] it is that the client intended to affect (that is, to *benefit*) the nonclient plaintiff." (*Ibid.*, italics added.)[4] The second group concerns whether a duty

---

[4] In this group, *Gordon* also included another factor: the morality of the attorney's actions. (*Gordon, supra,* 88 Cal.App.5th at p. 555, fn. 4.) The court noted "this factor is

13

to the nonclient would interfere with the "lawyer's 'paramount' and 'primary' duty . . . to carry[ ] out the client's intent." (*Id.* at p. 556.) "[C]ourts are less willing to impose a duty running from the client to a nonclient plaintiff if recognizing that additional duty might interfere with the lawyer's chief duty to the client." (*Ibid.*) Finally, "[t]he third group of factors assesses whether the recognition of a duty" to a nonclient would unduly burden the legal profession, "either by (a) making the lawyer 'subject to conflicting duties to different sets of [nonclient] beneficiaries' [citations] or (b) saddling the lawyer with open-ended liability that could act as a disincentive for lawyers to practice in that area of law and hence dry up access to the legal services in that area." (*Ibid.*)

*Gordon* continued: "After balancing the factors articulated above, the California courts have uniformly settled upon the following rule: A lawyer has a duty to a nonclient third party only if the client's intent to benefit that third party (in the way the third party asserts in their malpractice claim) is 'clear,' 'certain' and 'undisputed.' " (*Gordon, supra,* 88 Cal.App.5th at p. 556.) "[C]ourts will recognize a duty to a nonclient plaintiff—and thereby allow that plaintiff to sue the lawyer for legal malpractice—only when the plaintiff, as a threshold matter, establishes that the client, in a clear, certain and undisputed manner, told the lawyer, 'Do *X*' (where *X* benefits the plaintiff)." (*Ibid.*) "California courts have routinely insisted that nonclient plaintiffs bringing malpractice claims adduce clear, certain and undisputed evidence of the client's intent to benefit them in the way they are seeking to vindicate." (*Id.* at p. 557.)

_____

'rarely appl[ied]' " when analyzing an attorney's duty to a nonclient. (*Ibid.*)

14

Under the relevant factors and the "uniform[ ]" rule stated above (*Gordon, supra,* 88 Cal.App.5th at p. 556), Kramer owed no duty of care to Elyse as a matter of law. The first group of factors weighs heavily against plaintiffs. Kramer's services of drafting the 2019 trust intended to affect Elyse—but not to benefit her. Disinheriting her was among the 2019 trust's primary ends. Kramer's allegedly tortious conduct did not involve the client (whether Stephen or Andrew) telling him to do something that benefited Elyse.

The second and third groups of factors also favors Kramer. Imposing a duty from an attorney to a former beneficiary in these circumstances would likely interfere with the attorney's duty to his client. Kramer would have had to consider conflicting duties owed to every potential beneficiary of Stephen's estate plan.

Nor can plaintiffs "establish[ ] that the client, in a clear, certain and undisputed manner" (*Gordon, supra,* 88 Cal.App.5th at p. 556) instructed Kramer to do the opposite of what he did in 2019. As with any legal instrument, courts primarily determine a trustor's intentions based on his or her objective manifestations; most importantly, via the document the trustor executed. (See *Marsh v. Home Fed. Sav. & Loan Assn.* (1977) 66 Cal.App.3d 674, 682.)

Plaintiffs dispute Stephen's objectively manifested intent to disinherit Elyse. They do so by alleging various things that do not add up to a clear, certain, and undisputed showing that Stephen never intended to disinherit Elyse. They allege Stephen suffered from cognitive decline in 2018 and 2019, as purportedly corroborated by several documents. His general cognitive decline, however, does not necessarily mean he did not intend to disinherit Elyse. Plaintiffs also allege other facts that, at most, could circumstantially support the conclusion that Stephen did not intend to disinherit Elyse. For example, they allege that

15

Kramer directed the estate planning documents to Andrew, not Stephen, and that Stephen signed the revised trust the day after he signed the other estate planning documents.

Several allegations in the second amended complaint reveal that plaintiffs' claims boil down to what they "believe" happened: "Plaintiffs believe that . . . Decedent did not want to sign a new trust . . . . Plaintiffs believe that Decedent was pressured . . . to sign the 2019 Trust . . . . Plaintiffs believe that Decedent was told that he needed to make the changes." Plaintiffs further allege they "believe" an inconsistent alternative theory: "Alternatively, Plaintiffs believe that Decedent refused to sign the" 2019 trust as drafted and had it revised to include Elyse, but "Andrew . . . swapped key pages" of the document to disinherit Elyse. And they allege they did not know about any of these events until months later.

Plaintiffs' allegations and *post facto* beliefs about Stephen's subjective intent fall far short of showing it is clear, certain, and undisputed that Stephen did not intend to disinherit Elyse. Plaintiffs therefore fail to establish the "threshold matter" necessary (*Gordon, supra,* 88 Cal.App.5th at p. 556) to find Kramer owed a duty to Elyse.

This case is analogous to *Chang v. Lederman* (2009) 172 Cal.App.4th 67 (*Chang*). There, the plaintiff made the conclusory allegation that "the decedent intended to benefit the plaintiff and the lawyers responsible for the decedent's estate plan were aware of that intent." (*Id.* at p. 83.) The court nonetheless held the attorney owed no duty to the plaintiff. (*Id.* at p. 86.) The court reasoned: "[A]ny disappointed potential beneficiary" could allege the attorneys knew an instrument did not express the testator's intent, "and, without requiring an explicit manifestation of the testator's intentions, the existence of a duty—a legal question—

16

would always turn on the resolution of disputed facts and could never be decided as a matter of law." (*Id.* at p. 83.)

The *Chang* court further explained: "Expanding the attorney's duty of care to include actual beneficiaries who could have been, but were not, named in a revised estate plan . . . would expose attorneys to impossible duties and limitless liability because the interests of such potential beneficiaries are always in conflict." (*Chang, supra,* 172 Cal.App.4th at p. 86.) "[T]he results in such lawsuits, if allowed, would inevitably be speculative because the claim necessarily will not arise until the testator or settlor, the only person who can say what he or she intended or explain why a previously announced intention was subsequently modified, has died." (*Ibid.*)

*Chang*'s reasoning applies equally here. Elyse was an actual beneficiary of Stephen's 2018 trust. She could have been, but was not, named in the revised 2019 trust. Plaintiffs' malpractice claim requires proving that Stephen—then suffering from dementia, and now dead—intended the opposite of what he did. Just as Elyse claims Kramer breached a duty to her by revising Stephen's trust, Stephen's other relatives could claim Kramer breached a duty to them by not revising the trust. Imposing a duty to Elyse here would unduly burden estate-planning attorneys both by subjecting them to conflicting duties to different sets of beneficiaries and by saddling them with open-ended liability.

Moreover, the second amended complaint alleges Kramer breached a purported duty that, under settled law, does not exist. " '[A]n attorney preparing a will for a testator owes *no duty to the beneficiary of the will or to the beneficiary under a previous will* to ascertain and document the testamentary capacity of the client.' " (*Chang, supra,* 172 Cal.App.4th at p. 85.) An attorney has "no duty to evaluate whether the client has the mental capacity to

17

make a directive that disinherits the nonclient plaintiff." (*Gordon, supra,* 88 Cal.App.5th at p. 560.)  "[A] lawyer's duty to a nonclient does not extend to being a babysitter, a risk mitigation strategist, a sounding board, or a mental health specialist for the client.  Making a lawyer liable in malpractice to a nonclient for failing to act in any role beyond the role of implementing the client's undisputed intent to benefit that nonclient is bad public policy because it places an 'incentive [on the lawyer] to exert pressure on [the] client to complete and execute estate planning documents summarily' [citation], a result that contravenes the lawyer's overarching duty of loyalty to the client."  (*Ibid.*)

The second amended complaint alleges Kramer breached his duty to Elyse "by failing to properly determine Decedent's true testamentary intentions as reflected by the prior versions of the Trust, or properly and adequately test for capacity and/or properly determine that Decedent was of sound mind and not acting through the undue influence of others."  In substance, plaintiffs allege Kramer breached a duty to evaluate Stephen's mental capacity and to babysit and protect Stephen from himself and from relatives who sought to unduly influence him.  As a matter of law, Kramer owed no such duty to Elyse.

Contrary to plaintiffs' assertion, *Paul* does not support their position.  There, the plaintiffs alleged the attorney "admitted to a drafting error in another action."  (*Paul, supra,* 235 Cal.App.4th at p. 1100.)  The court concluded, "That is not an allegation most disappointed beneficiaries can make."  (*Ibid.*)  The plaintiffs' complaint also included as exhibits a letter by the attorney admitting to the mistake and a transcript of a deposition where he made the same admission.  (*Id.* at pp. 1091, 1093–1094.)  Here, plaintiffs allege something any disappointed beneficiary could.  They make the conclusory assertion that Kramer knew Stephen did not intend to disinherit Elyse.  They

18

do not allege Kramer admitted that.  The present case is thus factually distinguishable from *Paul*.

Opening the door to claims by disappointed beneficiaries so long as they merely allege the attorney knew the client did not intend the bequest would excessively burden estate-planning lawyers.  Plaintiffs do not cite any cases that support imposing a duty under these circumstances, and we decline to expand the scope of an estate-planning attorney's duty in this case.

## B. Plaintiffs Show No Reasonable Possibility of Curing the Defect

The trial court did not err in denying plaintiffs leave to amend as to their cause of action for legal malpractice.  Where "the demurrer was sustained without leave to amend, we consider whether there is a 'reasonable possibility' that the defect in the complaint could be cured by amendment."  (*King v. CompPartners, Inc.* (2018) 5 Cal.5th 1039, 1050.)  "The burden is on plaintiffs to prove that amendment could cure the defect."  (*Ibid.*)

Plaintiffs do not meet that burden.  They make only conclusory arguments that they can expand the same sorts of allegations that Kramer knew Stephen lacked testamentary capacity and knew Stephen did not intend to disinherit Elyse.  Inserting more text into the pleading to expand these legally insufficient allegations would not cure the defect in plaintiffs' malpractice claim.  Plaintiffs do not specify any allegations they can make that will satisfy the requirements to hold an attorney liable to a nonclient under *Gordon*, *Paul*, and *Chang*.

## DISPOSITION

The judgment of dismissal is reversed as to the second amended complaint's first cause of action against Kramer for

financial elder abuse.  The judgment of dismissal is affirmed as to the second amended complaint's second cause of action against Kramer for legal malpractice.  The matter is remanded to the trial court for further proceedings consistent with this opinion.  The parties shall bear their own costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


TAMZARIAN, J.

We concur:



ZUKIN, P. J.



COLLINS, J.